En el Tribunal Supremo de Puerto Rico

| Eudaldo Báez Galib | |
| Peticionario | |
| | Mandamus |
| V. | |
| | 99TSPR3 |
| Hon. Pedro Rosselló González | |
| Hon. Norma Burgos | |
| Hon. Ricardo Román | |
| Demandados | |

Número del Caso: MD-99-1

Abogado de la Parte Peticionaria: Por Derecho Propio

Fecha: 1/22/1999

Este documento constituye un documento oficial
del Tribunal Supremo que está sujeto a los
cambios y correciones del proceso de compilación
y publicación oficial de las decisiones del
Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eudaldo Báez Galib

    Peticionario


    v.                                    MD-99-1
Mandamus

Hon. Pedro Rosselló González,
Hon. Norma Burgos y Hon.
Ricardo Román

    Demandados


Opinión del Tribunal emitida por el Juez Asociado señor Negrón García
                   (Regla 50)



San Juan, Puerto Rico, a 22 de enero de 1999

De entrada, las consecuencias políticas, el debate dentro o fuera del país, las especulaciones que para el status o elecciones generales puedan derivarse de los resultados del plebiscito, no son de incumbencia judicial. Nuestra función es velar por el fiel acatamiento de la Constitución y las leyes. Nuestro sistema de vida democrático sufre cuando los criterios particulares que ostentan en determinada época los funcionarios encargados de ejecutar

la ley, prevalecen sobre las mayorías
electorales.

I

Procede en jurisdicción original,[1] al amparo de la Regla 50 de nuestro Reglamento, sin ulterior trámite, acoger el *mandamus* instado por el Lcdo. Eudaldo Báez Galib, como elector pro se, ordenando a la Secretaria de Estado, Hon. Norma Burgos a cumplir con el Art. 29 de la Ley del Plebiscito, Núm. 249 del 17 de agosto de 1998.

Están presentes los requisitos para su expedición, a saber, la demanda jurada va dirigida contra principales funcionarios públicos y se trata de un asunto de gran importancia e interés público que requiere la más pronta adjudicación. Hernández Agosto v. Romero Barceló, 112 D.P.R. 407, 411 (1982) y casos allí citados.

II

En lo pertinente, el artículo 29 de la referida Ley Núm. 249 dispone que "[e]l Presidente de la Comisión Estatal de Elecciones deberá enviar **una certificación de los resultados** del Plebiscito al Gobernador de Puerto Rico y al Secretario de Estado.... El Gobernador, **a su vez**, **certificará el resultado** al Presidente y al Congreso de los Estados Unidos y a la Asamblea Legislativa de Puerto Rico. El Secretario de Estado publicará en los medios de comunicación el **resultado del escrutinio general**." (Énfasis suplido).

---

[1] La Ley de Recursos Extraordinarios define el *mandamus*, como un auto altamente privilegiado dirigido a una persona o personas, a una corporación o a un tribunal de inferior jerarquía, requiriéndole el cumplimiento de algún acto que en el auto se exprese, que está dentro de

La Asamblea Legislativa asignó[2] a la Secretaria de Estado publicar en los medios de comunicación los resultados del plebiscito. La lectura racional y desapasionada del artículo antes citado revela que en dicha encomienda, de carácter integral y ministerial, hay una ausencia total de discrecionalidad. Veamos.

Como paso inicial, el estatuto contempla que el Presidente de la Comisión Estatal de Elecciones prepare y envíe una certificación oficial de los resultados del escrutinio -contabilización de las papeletas adjudicadas a las columnas, más las nulas y depositadas en blanco- al Gobernador y a la Secretaria de Estado. La ley **manda** a dichos funcionarios, sin excusa o discreción alguna, publicar y remitir, respectivamente, tales resultados conforme la certificación del Presidente de la Comisión Estatal.

No cabe otra interpretación. La certificación del Presidente de la Comisión Estatal de Elecciones del 22 de diciembre de 1998, constituye el único documento oficial, a ser íntegramente certificado y publicado, sin cambio alguno. Como tal, no es susceptible de ser modificado, sea alterando su orden o el formato de su contenido. El

---

sus atribuciones o deberes. 32 L.P.R.A. sec. 3421. Los demandados fueron emplazados el 15 de enero de 1999.

[2] Es función primordial del Secretario de Estado promulgar todas las proclamas y ordenes del Gobernador, así como todas las leyes decretadas por la Asamblea Legislativa. 3 L.P.R.A sec. 51. En adición, el Secretario de Estado tiene que cumplir con todas las obligaciones que la Asamblea Legislativa le asigne. 3 L.P.R.A sec. 53(1).

mandato legislativo no confiere libertad a la Secretaria de Estado, Hon. Burgos ni al Gobernador, Hon. Rosselló González para apartarse de la aludida certificación original.

Frente al mismo, conforme los anejos unidos a la petición de *mandamus,* el 24 de diciembre el Depto. de Estado publicó un "Aviso" citando como autoridad el Art. 29 de la Ley del Plebiscito. **La publicación no cumple con la ley**. Es un arreglo peculiar que tiene el efecto de destacar y situar como fórmula triunfante de status a la estadidad, adjudicándole valor mayoritario, con exclusión del verdadero resultado. Dicha publicación relega a un segundo plano –la incluye entre las papeletas blancas y nulas–, los resultados de la quinta columna ("Ninguna de las Anteriores"), menoscabando la intención de la Asamblea Legislativa, que en aras de la libertad de conciencia de todos los electores e imperativo constitucional de orden jurisprudencial,[3] reconoció la opción de rechazar **todas las propuestas de status según éstas fueron definidas**. Tal actuación desmerece el valor del voto inextricablemente unido a una alternativa incorporada legislativamente en la papeleta, y que a diferencia de las nulas y las en blanco, confería a los electores una opción específica. **La publicación del Depto. de Estado es un acto de preterición electoral**. Tiene como resultado, el absurdo de no

_____

[3] Sánchez Vilella v. E.L.A., res. en 4 de noviembre de 1993.

contabilizar el cincuenta punto tres (50.3%) por ciento de los electores que legítimamente la apoyaron.

El Depto. de Estado no podía interpretar a su modo los resultados del plebiscito y apartarse de la certificación oficial del Presidente de la Comisión Estatal. El único curso de acción legal específico era publicar en los medios de comunicación los resultados reproduciendo fiel e íntegramente la certificación del Presidente de la Comisión Estatal.

### III

En torno al *mandamus* dirigido al Gobernador, Hon. Pedro Rosselló, nos abstenemos en esta etapa de darle curso al mismo. Más allá de unas manifestaciones que se le atribuyen, no hay en autos prueba suficiente de que, en un término razonable, el Gobernador, Hon. Rosselló González, al remitir al Presidente y Congreso de los Estados Unidos y a la Asamblea Legislativa los resultados del Plebiscito, vaya a omitir la certificación oficial aquí aludida. Se le concede un término de veinte (20) días para que exponga su posición al respecto.

Se dictará sentencia parcial emitiendo *mandamus* dirigido a la Secretaria de Estado, Hon. Norma Burgos, para que dentro del término de tres (3) días proceda, al amparo del Art. 29 de la Ley del Plebiscito, publicar fielmente los resultados del Plebiscito incorporando exclusivamente el texto total de la certificación del Presidente de la Comisión Estatal de Elecciones.

ANTONIO S. NEGRÓN GARCÍA
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eudaldo Báez Galib

    Peticionario

    v.                                    MD-99-1
Mandamus

Hon. Pedro Rosselló González,
Hon. Norma Burgos y Hon.
Ricardo Román

    Demandados

SENTENCIA

San Juan, Puerto Rico, a 22 de enero de 1999

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se dicta Sentencia Parcial emitiendo un auto de *mandamus* dirigido a la Secretaria de Estado, Hon. Norma Burgos para que dentro del término de tres (3) días proceda, al amparo del Art. 29 de la Ley del Plebiscito, a publicar fielmente los resultados del Plebiscito incorporando exclusiva-mente el texto total de la certificación del Presidente de la Comisión Estatal de Elecciones.

Se le concede al Gobernador, Hon.Pedro Rosselló González, un término de veinte (20) días para que exponga su posición al respecto.

Notifíquese por escrito, vía telefónica y telefax.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió Opinión

Disidente. El Juez Asociado señor Corrada del Río disiente por entender que el curso decisorio seguido por el Tribunal violenta los principios más elementales del debido procedimiento de ley al conceder el remedio de *mandamus* contra la Secretaria de Estado sin darle la oportunidad de ser

oída, por lo que la decisión del Tribunal constituye un decreto inconstitucional e ilegal.

Isabel Llompart Zeno

Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eudaldo Báez Galib

    Peticionario


    v.                        MD-99-1        Mandamus

Hon. Pedro Rosselló González,
Hon. Norma Burgos y Hon.
Ricardo Román

    Demandados


SENTENCIA


San Juan, Puerto Rico, a 22 de enero de 1999


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se dicta Sentencia Parcial emitiendo un auto de *mandamus* dirigido a la Secretaria de Estado, Hon. Norma Burgos para que dentro del término de tres (3) días proceda, al amparo del Art. 29 de la Ley del Plebiscito, a publicar fielmente los resultados del Plebiscito incorporando exclusiva-mente el texto total de la certificación del Presidente de la Comisión Estatal de Elecciones.

Se le concede al Gobernador, Hon.Pedro Rosselló González, un término de veinte (20) días para que exponga su posición al respecto.

Notifíquese por escrito, vía telefónica y telefax.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió Opinión Disidente. El Juez Asociado señor Corrada del Río disiente por entender que el curso decisorio seguido por el Tribunal violenta los principios más elementales del debido procedimiento de ley al conceder el remedio de *mandamus* contra la Secretaria de Estado sin darle la oportunidad de ser

oída, por lo que la decisión del Tribunal constituye un decreto inconstitucional e ilegal.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eudaldo Báez Galib

    Peticionario

      vs.              MD-99-1        CERTIORARI

Hon. Pedro Rosselló González
Hon. Norma Burgos y Hon.
Ricardo Román

    Demandados

**OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ**

San Juan, Puerto Rico, a 22 de enero de 1999

Disentimos de la Opinión mayoritaria por dos razones: (1) la curiosa rapidez con que se dilucida el asunto, y, (2) porque entendemos que el asunto planteado por el recurso hoy ante nuestra consideración versa sobre una cuestión política.

A pesar de que una lectura de la Opinión que emite una mayoría de los integrantes del Tribunal en el presente recurso causa la impresión, <u>de primera instancia</u>, que ésta puede ser correcta desde un punto de vista jurídico, <u>la realidad es que no lo es</u>.

I

En primer lugar, ¿cuál es la urgencia? De ordinario, este Tribunal no actúa, esto es, no resuelve un recurso pendiente ante su consideración sin antes brindarle una oportunidad razonable a la otra parte para que se exprese al respecto. ¿Porqué no seguir ese curso decisorio en el presente asunto?

**Es muy posible que la comparecencia del Señor Gobernador de Puerto Rico y la de la Señora Secretaria de Estado no cambie el resultado del caso. ¿Quién, sin embargo, lo puede decir con absoluta certeza? El escuchar la posición contraria no le causa perjuicio a persona alguna. Después de todo, debemos mantener siempre bien presente que nadie tiene el monopolio de la verdad. "En algún punto perdido del universo, cuyo resplandor se extiende a innumerables sistemas solares, hubo una vez un astro en el que unos [seres] inteligentes inventaron el conocimiento. Fue aquel el instante más mentiroso y arrogante de la historia universal."[4]**

**Repetimos, ¿por qué no escuchar la posición del Departamento de Estado sobre este asunto? La prisa no conduce a nada bueno. Además, nos preguntamos: ¿no constituye una abierta y clara contradicción el hecho de que se resuelva definitivamente el caso con el hecho de que se le conceda un término de veinte (20) días al Señor Gobernador de Puerto Rico "...para que exponga su posición al respecto."?**

II

**Por otra parte, nótese que, de la desapasionada lectura de los documentos obrantes en autos, se desprende que el contenido de ambas certificaciones ‑‑la expedida por la comisión Estatal de Elecciones y la del Departamento de Estado[5]‑‑ es prácticamente el mismo. Sin embargo, quien lee la Opinión Mayoritaria podría pensar que los resultados de la mayoría de los votantes del evento electoral en cuestión fueron, o**

---

[4] M. Foucault, _La verdad y las formas jurídicas_, pág. 19, citando a Nietzsche.

excluidos, o certificados como derrotados, o incluidos en letras poco conspicuas. Ni los resultados certificados por la Comisión Estatal de Elecciones ni los publicados por el Departamento de Estado certifican, <u>de manera expresa</u>, que hubo un ganador.

De ambos documentos surge que la columna designada "ninguna de las anteriores" recibió el mayor número de votos. Nadie puede tapar el cielo con la mano. La médula de nuestro disenso radica en que el contenido de ambos documentos es similar. <u>Estamos pues ante un asunto de forma</u>.

Debemos tener bien claro que el Artículo 29 de la Ley 249 de 17 de agosto de 1998, impuso a la Secretaria de Estado la obligación de publicar "en los medios de comunicación el resultado del escrutinio general." ¿Cumplió con ello? <u>Entendemos que sí</u>. No comprendemos la aseveración de la mayoría a los efectos de que el Departamento de Estado no contabilizó el cincuenta punto tres por ciento de los votos. ¿Se omitió en el documento tal por ciento de votos? <u>No</u>. Volvemos a repetir, estamos ante una cuestión de forma. El hecho de que un resultado esté ubicado antes que otro <u>no</u> significa necesariamente que se está tergiversando un resultado. ¿Obliga la Ley a que el Departamento de Estado publique los resultados en el mismo formato que usó la Comisión Estatal de Elecciones? <u>No</u>.

Debido al hecho de que entendemos que, básicamente, estamos ante un asunto de forma, <u>denegaríamos el auto por envolver el mismo una cuestión política</u>. La doctrina de cuestión política presenta un problema de separación de poderes. Hay asuntos que no son susceptibles de determinación judicial porque su resolución corresponde a las ramas políticas de gobierno quienes a su vez responden al pueblo.[6] Tal es el

---

[5] Se anejan copia de ambas certificaciones. Ver Anejos 1 y 2.

[6] En <u>Noriega Rodríguez</u> v. <u>Hernández Colón</u>, Opinión y Sentencia de 18 de marzo de 1994, este Tribunal discutió ampliamente la doctrina de cuestión política y señaló que existen tres vertientes de ésta:

"(a) la que requiere que los tribunales no asuman jurisdicción sobre un asunto porque éste ha sido asignado textualmente por la Constitución a otra rama de gobierno; <u>(b) aquella según la cual las cortes deben abstenerse de</u>

asunto hoy ante nuestra consideración. Este Tribunal no cuenta con "criterios de decisión" para imponerle a otra rama de gobierno --la Ejecutiva-- la obligación de publicar unos resultados en la misma forma y manera en que lo hizo la Comisión Estatal de Elecciones. Es decir, ni la Ley Electoral[7] ni la Ley habilitadora del Plebiscito[8] impusieron la obligación de publicar los resultados siguiendo el mismo estilo que el de la Comisión; <u>el deber ministerial del Departamento de Estado es publicar los resultados</u>. Así lo hizo dicho Departamento.

¿Qué implicación práctica conlleva que este Tribunal altere el orden de la publicación para conformarlo al de la Comisión Estatal de Elecciones? <u>El orden no afecta el resultado</u>. El juzgador de las actuaciones del Departamento de Estado en su día será el Pueblo puertorriqueño. La Ley no habla de formalismos. Nos cuestionamos si afectará adversamente a las partes la decisión que hoy toma una Mayoría de los miembros de este Tribunal. Lo cierto es que no tiene ningún efecto jurídico para ninguna de las partes involucradas y que no deja de ser más que una <u>intervención indebida</u> por parte de este Tribunal con un asunto que le compete a las ramas políticas de nuestro gobierno. Nos preocupa que este Tribunal entre a considerar recursos que claramente no presentan un "caso y controversia justiciable". Somos del criterio que consideraciones de índole prudenciales impedían que interviniéramos en este caso.

"En momentos de pasión política, la falta de honradez o la venganza son motivaciones fácilmente atribuibles a la conducta legislativa. Sin embargo, los tribunales no son el lugar adecuado para estas controversias. Corresponde a la autodisciplina de los legisladores y a

---

intervenir bien porque no existen criterios de decisión susceptibles de descubrirse y administrarse por los tribunales, bien por la presencia de otros factores análogos y (c) la que aconseja la abstención judicial por consideraciones derivadas de la prudencia. ..." (Énfasis suplido.)

[7] Ley Núm. 4 de 20 de diciembre de 1977, 16 L.P.R.A. sec. 3310.
[8] Ley Núm. 249 de 17 de agosto de 1998.

**los electores, en última instancia, desalentar o corregir tales abusos."**

**Tenney v. Brandhove, 341 U.S. 367, 377-378 (1951).**

**Es por ello que disentimos.**

FRANCISCO REBOLLO LÓPEZ
Juez Asociado