EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Manuel R. ("Manny") Suarez Jiménez; ets als<br><br>        Demandantes/Peticionarios<br><br>                v.<br><br>Comisión Estatal de Elecciones;<br>Aurelio Gracia, Presidente; ets als<br><br>        Demandados/Recurridos | Certificación<br><br>2004 TSPR 179<br><br> 163 DPR \_\_\_\_ |

Número del Caso: CT-2004-4

Fecha: 20 de noviembre de 2004

Tribunal de Primera Instancia
Sala Superior de San Juan


Abogada de la Parte Peticionaria:

                Lcda. María Soledad Piñeiro


Abogados de la Parte Recurrida:

                Lcdo. Pedro Delgado
                Lcdo. Luis Estrella
                Lcdo. Gerardo de Jesús Annoni
                Lcdo. Juan Dalmau
                Lcdo. Thomas Rivera Shatz
                Lcdo. Pedro Ortiz Alvarez


Materia: Solicitud de Certificación de Recurso ante el Tribunal de
         Primera Instancia, Sala de San Juan


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel R. ("Manny") Suárez,
*et al.*

    Demandante-Peticionarios

       v.

                        CT-2004-0004  Certificación

Comisión Estatal de Elecciones,
*et al.*

    Demandados-Recurridos

PER CURIAM

San Juan, Puerto Rico, a 20 de noviembre de 2004.

Nos corresponde determinar si son válidas aquellas papeletas estatales de los comicios electorales del 2 de noviembre de 2004 en las que los electores emitieron su voto realizando una marca bajo la insignia del Partido Independentista Puertorriqueño (en adelante P.I.P), otra a favor del Lcdo. Aníbal Acevedo Vilá como candidato a Gobernador por el Partido Popular Democrático (en adelante P.P.D) y otra a favor del Lcdo. Roberto Prats Palerm como candidato a Comisionado Residente de esta última colectividad política.

I.

Los hechos medulares no están en controversia. El pasado 2 de noviembre de 2004 se celebraron en Puerto Rico las elecciones generales. Tras el conteo inicial, y a tenor con el mandato establecido en el Art. 6.007 de la Ley Electoral de Puerto Rico, Ley Núm. 4 de 20 de diciembre de 1977, 16 L.P.R.A. sec. 301 *et seq.* (en adelante Ley Electoral de Puerto Rico), la Comisión Estatal de Elecciones certificó preliminarmente como Gobernador electo al Lcdo. Aníbal Acevedo Vilá, candidato del P.P.D. En aras de certificar oficialmente a los candidatos electos en los pasados comicios electores, el 12 de noviembre de 2004 la C.E.E. comenzó el escrutinio general.

Comenzado dicho procedimiento, el Comisionado Electoral del P.N.P, Lcdo. Thomas Rivera Schatz, objetó la validez de todas aquellas papeletas en las cuales los electores votaron bajo la insignia del P.I.P y, a su vez, brindaron su voto al Lcdo. Aníbal Acevedo Vilá como candidato a Gobernador y al Lcdo. Roberto Prats Palerm como candidato a Comisionado Residente. A juicio del Lcdo. Rivera Schatz, en estas circunstancias dichos votos son nulos, por lo cual no hay forma de determinar la intención del elector.

El Comisionado Electoral del P.P.D, Lcdo. Gerardo Cruz Maldonado, se opuso a esta solicitud. Entendió éste que

el voto impugnado se debe considerar como un voto mixto. Eventualmente, y con la oposición del Comisionado Electoral del P.N.P., el Presidente de la C.E.E., Lcdo. Aurelio Gracia Morales, determinó que se trataba de una papeleta de voto mixto y que procedía adjudicarse como tal.

Posteriormente, el Sr. Manuel R. ("Manny") Suárez Jiménez y un grupo de electores que emitió el tipo de voto en controversia (en adelante el señor Suárez Jiménez), acudieron ante el Tribunal de Primera Instancia, Sala Superior de San Juan, mediante una solicitud de sentencia declartoria e "injunction" solicitando, en esencia, que dicho foro decretara la validez de sus votos. En oposición, el Comisionado Electoral del P.N.P, Lcdo. Thomas Rivera Schatz, solicitó la desestimación de la demanda por entender que el tribunal carecía de jurisdicción por no existir una controversia genuina, ya que la C.E.E. había resuelto que los votos mixtos objeto de controversia eran válidos. Atendidos los planteamientos de las partes, el Tribunal de Primera Instancia ordenó en sala la desestimación del pleito sin perjuicio.[1]

Inconforme, y al amparo de lo dispuesto en el Art. 3.003 (e) de la Ley de la Judicatura de 2003, Ley Num. 201 de 22 de agosto del 2003 y de la Regla 23 del Reglamento del Tribunal Supremo de Puerto Rico, 4

---

[1] Posteriormente, a solicitud de los demandantes y habiéndose presentado el recurso de certificación, el foro de instancia emitió su sentencia por escrito.

L.P.R.A Ap. XXI-A, el señor Suárez Jiménez acudió ante este Tribunal el 17 de noviembre de 2004 mediante recurso de certificación. En síntesis, sostiene que el foro de instancia incidió al no conceder los remedios provisionales para garantizar el voto de aquellos electores que como él emitieron un voto bajo la insignia del Partido Independentista Puertorriqueño y, a su vez, otorgaron un voto a Aníbal Acevedo Vilá como candidato a Gobernador y a favor de Roberto Prats Palerm como candidato a Comisionado Residente. Tras la presentación del recurso de certificación, emitimos una Resolución en la que le concedimos un término a las partes para que se expresaran en torno a si procedía nuestra intervención y sobre los méritos de las alegaciones de los peticionarios. En vista de ello, y con el beneficio de la comparecencia de las partes, resolvemos.

II

Conforme al Art. 3.002 de la Ley de la Judicatura de 2003, *supra*, este Tribunal tiene jurisdicción para intervenir mediante auto de certificación en asuntos pendientes ante el Tribunal de Primera Instancia o ante el Tribunal de Apelaciones "cuando [...] se planteen cuestiones noveles de derecho, o se planteen cuestiones de alto interés público que incluya cualquier cuestión constitucional sustancial al amparo de la Constitución del Estado Libre Asociado de Puerto Rico o de la Constitución de Estados Unidos". 4 L.P.R.A. sec. 24(s)(e). *Véase*, además, Regla 23 del Reglamento de este Tribunal, *supra*.

En el presente caso, el recurso de certificación nos fue presentado luego de que el foro de instancia adelantara una decisión en corte abierta. El asunto estaba pendiente ante dicho tribunal cuando el peticionario acudió directamente ante nos solicitando la certificación del caso. Considerando la importancia del asunto y el interés público de que este Tribunal intervenga directamente en la adjudicación de un asunto de derecho, procede la certificación.

Al adjudicar este recurso partimos de la premisa de que este Tribunal tiene la obligación constitucional de resolver una controversia como la de autos, en la que está involucrado el derecho fundamental al sufragio a la luz de un ordenamiento totalmente estatal. Aunque somos conscientes de que en la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico se está ventilando un caso que involucra una controversia sobre el proceso electoral del 2 de noviembre de 2004, nuestra decisión se ampara exclusivamente en la Constitución del Estado Libre Asociado de Puerto Rico y en las disposiciones estatutarias y reglamentarias de nuestra jurisdicción. Como custodios e intérpretes máximos de nuestro ordenamiento jurídico, no abdicaremos nuestra obligación constitucional. P.S.P. v. C.E.E., 110 D.P.R. 538, 541 (1980), ("Este Tribunal Supremo no puede abdicar sus funciones constitucionales ante actuaciones carentes de toda base jurídica a la luz de la propia jurisprudencia federal aplicable".)

III

A

Ante el foro de instancia el señor Suárez Jiménez presentó una solicitud de sentencia declaratoria al amparo de la Regla 59.1 de Procedimiento Civil. 32 L.P.R.A. Ap. III, R. 59.1. Como se sabe, esta regla dispone que, "[e]l Tribunal de Primera Instancia tendrá autoridad para declarar **derechos**, estados y otras relaciones jurídicas aunque se inste o pueda instarse otro remedio". Id., (Énfasis suplido.)

De igual modo, dispone, en lo pertinente, que:

[t]oda persona [...] cuyos derechos [...] fuesen afectados por un estatuto [...] podrá solicitar una decisión sobre cualquier divergencia en la interpretación o validez de dichos estatutos [...] y además que se dicte una declaración de los derechos, estados u otras relaciones jurídicas que de aquéllos se deriven. Regla 59.2 de las de Procedimiento Civil; 32 L.P.R.A. Ap. III, R. 59.2.

Por tanto, "la sentencia declaratoria es aquella que se dicta en un proceso en el cual los hechos

alegados demuestran que existe una controversia sustancial entre partes que tienen intereses legales adversos, sin que medie lesión previa de los mismos con el propósito de disipar la incertidumbre jurídica y contribuir a la paz social". R. Hernández Colón, *Derecho Procesal Civil*, Ed. Michie de Puerto Rico, 1997, a la pág. 448.

El objetivo de la Regla 59 de Procedimiento Civil, supra, la cual regula lo relativo a las sentencias declaratorias, es proveer al ciudadano un mecanismo procesal de carácter remedial mediante el cual se dilucide ante los tribunales los méritos de cualquier reclamación que en forma latente entrañe un peligro potencial en su contra. <u>Charana v. Pueblo</u>, 109 D.P.R. 641, 653 (1980).

Asimismo, en variadas ocasiones hemos expresado que el mecanismo de sentencia declaratoria es el adecuado para adjudicar controversias de índole constitucional, <u>Asociación de Periodistas</u> v. <u>González</u>, 127 D.P.R. 704 (1991) y, conforme a la doctrina prevaleciente, debe utilizarse cuando permite finalizar situaciones de incertidumbre o inseguridad en cuanto a derechos. Se ha indicado al respecto que:

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in claryfing and settling the legal relations in issue, and (2) **when it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding.** Wright and Miller, *Federal practice and Procedure*, Ed. West.,1998, pág. 543. (Énfasis suplido).

Siendo ello así, no albergamos dudas de que en el presente caso procedía la intervención del foro de instancia para aclarar la incertidumbre jurídica con relación a los derechos de electores que votaron de una forma en particular y que corren el riesgo de que sus votos no sean contados, pues a pesar de la decisión del Presidente de la C.E.E. de contar dichos votos, tomamos conocimiento judicial de que permea una sensación de incertidumbre sobre la corrección de esa determinación.

El presente pleito requiere, pues, una gestión adjudicativa en torno a la validez de una forma particular de votación a la luz de los estatutos de Puerto Rico, asunto que, como se sabe, compete exclusivamente a los tribunales de Puerto Rico. La presente controversia, además, requiere nuestra pronta atención para dar certeza y finalidad a la incertidumbre que al respecto impera: "Esta certeza y finalidad solamente se la puede dar el Tribunal Supremo de Puerto Rico". Báez Galib v. Comisión Estatal de Elecciones, res. El 2 de noviembre de 2000, 2000 TSPR 161.

Aclarado ello, repasemos los principios estatutarios y jurisprudenciales que gobiernan el asunto.

B.

Al considerar los méritos del presente caso partimos de dos premisas ineludibles. Primero, en nuestro ordenamiento jurídico, el sufragio, como expresión individual y colectiva, ocupa un sitial de primerísimo orden que obliga a los tribunales a conferirle la máxima protección. Y segundo, ante cualquier posible vaguedad o laguna en las disposiciones estatutarias o reglamentarias que regulan el ejercicio del voto, la interpretación adoptada debe dar primacía a la máxima protección de la expresión electoral. PPD v. Barreto, 111 D.P.R. 199, 260 (1981). Véase también Granados Navedo v. Rodríguez Estrada I, 123 D.P.R. 1 (1988); PNP v. Rodríguez Estrada, 123 D.P.R. 1 (1988); Santos v. CEE, 111 D.P.R: 351 (1981); PSP v. CEE, 110 D.P.R. 400 (1980). En este sentido reafirmamos los principios de interpretación estatutaria que en materia electoral expresamos en P.S.P. v. C.E.E., 110 D.P.R. 400 (1980), de la siguiente manera:

> ...**[al evaluar un voto] debe ser norma irreducible la de evaluarlo con el mayor respeto a la voluntad del elector y con el óptimo esfuerzo por salvar su intención si ésta encuentra apoyo en la intención aplicada al examen de la papeleta, obviando inobservancias de índole formal que en el ejercicio de entendimiento razonable no ocultan ni enredan en confusión la verdadera intención del votante.** Id. a la pág. 460, (énfasis suplido).

Aclarado lo anterior, examinemos la controversia planteada ante nuestra consideración.

C.

El señor Suárez Jiménez sostiene que, en días recientes, y en distintos foros, se ha cuestionado por parte del Comisionado Electoral del Partido Nuevo Progresista, Lcdo. Thomas Rivera Schatz, la validez de aquellas papeletas estatales que contienen una marca bajo la insignia del P.I.P., y en las que, además, se incluyó una marca a favor del Lcdo. Aníbal Acevedo Vilá como candidato a Gobernador y otra a favor de Roberto Prats Palerm como candidato a Comisionado Residente. Señala que el Comisionado Electoral del P.N.P. ha alegado que dichas papeletas son nulas, pues el voto mixto es aquél en el cual se vota bajo la insignia de un partido político, y además, se tiene derecho a votar por un candidato a Gobernador **o** un candidato a Comisionado Residente.

El Art. 5.028 de la Ley Electoral de Puerto Rico, Ley Num. 4 de 20 de diciembre de 1977, *et seq.* (en adelante Ley Electoral de Puerto Rico) establece que antes de la elección general de 2004, la Comisión Estatal de Elecciones de Puerto Rico debía establecer, mediante reglamento, la forma en que los electores marcarían sus papeletas con el propósito de consignar en ellas su voto. Según la ley, este método para marcar la papeleta debía ser el más sencillo posible que se ajustara al diseño de la papeleta, y permitiese que se pudiese emitir el voto por una candidatura íntegra o mixta.

A tenor con ello, el 2 de julio de 2004 la C.E.E. aprobó el Reglamento para las Elecciones Generales y el Escrutinio General de 2004 (en adelante Reglamento para las Elecciones Generales). En particular, la Regla 50 de dicho reglamento establece, en lo pertinente, que en las elecciones generales del martes 2 de noviembre de 2004, los electores podían votar de cualquiera de las siguientes formas, a saber:

> **Voto Mixto:** – **Cuando el (la) elector(a) ennegrece el óvalo, hace una marca o cruz de cualquier dimensión o forma dentro del cuadrante de la *insignia del partido político* de su preferencia, y hace, además, una cruz o marca individual dentro del cuadrante donde aparece el nombre de un@ o más candidat@s en las columnas de otros partidos políticos, o candidat@s independientes, o escribe nombres de personas que no figuren como candidat@s en**

**la columna de Nominación Directa**. (Énfasis suplido.)

Es decir, y en lo pertinente al asunto ante nuestra consideración, una "Papeleta Mixta" es aquélla en la que el elector vota marcando en la papeleta electoral individualmente o en combinación con una marca por la insignia de un partido, cualquier combinación de candidatos, sean o no del mismo partido o independientes, o mediante la inclusión de nombres no encasillados en la papeleta. Art. 1.003 de la Ley Electoral de Puerto Rico, Ley Núm. 4 de 20 de diciembre de 1977.

Por otro lado, las instrucciones sobre cómo votar mixto contenidas en la Papeleta Electoral Estatal, entregada a los electores el día 2 de noviembre de 2004, expresa, en lo pertinente, que para votar mixto en dicha papeleta:

> **[s]e hace una marca (X) válida debajo de la insignia del partido de su preferencia** y se hace una marca al lado de otro candidato fuera de la columna de su partido, o escribe el nombre de otra persona de su preferencia bajo el cargo correspondiente, en la última columna de Nominación Directa. **Tenga en cuenta que sólo puede votar por un (1) candidato a Gobernador y por un (1) candidato a Comisionado Residente.** (Énfasis suplido).

De lo anterior podemos colegir que el voto mixto en esta papeleta está concebido de tal forma que permite aquel voto en el cual el elector confiere un voto en la insignia de un partido político, y además, vota por un candidato a Gobernador **y** por un candidato a Comisionado Residente.[2]

De hecho, en lo medios de comunicación del país (periódicos, radio, televisión, y en la página de internet de la C.E.E. , www.ceepur.org) se orientó a los electores respecto a que este tipo de voto era totalmente válido. A manera de ejemplo, el anuncio modelo publicado por la C.E.E. en los periódicos de circulación general del país, del cual tomamos conocimiento judicial, establecía, en lo pertinente, que:

---

[2] De haber sido otra la intención de los miembros de la C.E.E. se hubiese dispuesto como advertencia al elector en la papeleta lo siguiente: " *Tenga en cuenta que solo puede votar por un (1) candidato a Gobernador **o** por un (1) candidato a Comisionado Residente".*

**CÓMO VOTO MIXTO?**

> **Si además de votar bajo la insignia de un partido**, tienes preferencia por <u>uno o más candidatos de otros partidos</u> para <u>uno o más cargos</u>, o por un candidato independiente, **podrás hacer una marca válida en el espacio en blanco que aparece al lado izquierdo del nombre del candidato que prefieras fuera de la columna de tu partido**. También puedes votar por otras personas de tu preferencia que no aparezcan como candidatos, escribiendo su nombre bajo el cargo correspondiente en la columna de "Nominación Directa". Ten en cuenta que sólo puedes votar por un candidato para cada cargo, incluyendo un solo candidato a Representante y Senador por Acumulación, excepto para Senadores de Distrito, que puedes votar por dos (2) candidatos, porque son dos (2) cargos en cada distrito. Cada voto expresamente marcado contará solamente para el candidato marcado y no para el candidato al mismo cargo del partido bajo el cual votas. Si votas por más del número de candidatos a que tienes derecho para cada posición, anulas el voto para esa posición. (En énfasis.)

En vista de ello, no nos cabe la menor duda de la validez de aquel voto mixto en el cual el elector emitió un voto bajo la insignia del P.I.P., y otorgó un voto a favor de Aníbal Acevedo Vilá como candidato a Gobernador y un voto a favor de Roberto Prats Palerm como candidato a Comisionado Residente. La Ley Electoral, Reglamentos y las instrucciones en la Papeleta Electoral Estatal así lo permiten.

El voto mixto, en circunstancias como la de autos, custodia los intereses de aquellos electores que desean que el partido político al que pertenecen quede inscrito con independencia de si sus candidatos a puestos electivos resultan electos o no. Es decir, **el voto bajo la insignia de un partido político en la papeleta estatal tiene un valor independiente que no está vinculado con la elección de ningún candidato**. El Art. 3.001, inciso 1, de la Ley Electoral de Puerto Rico, *supra*, establece que:

> (1) **Se considerará "Partido Principal" todo aquél no coligado que obtuviera en el encasillado correspondiente a su insignia en la papeleta para Gobernador y Comisionado Residente, en la elección general precedente una cantidad de votos no**

**menor de siete (7) por ciento del total de votos depositados para todas las insignias de partidos,** o que obtuviera en la papeleta para Gobernador y Comisionado Residente en la elección precedente una cantidad no menor del tres (3) por ciento del total de papeletas íntegras depositadas para todos los partidos; o cuyo candidato a Gobernador obtuviere en la elección general precedente una cantidad no menor de cinco (5) por ciento del total de votos depositados para todos los candidatos a dicho cargo. En el caso de partidos coligados, la determinación de la condición de partido principal se hará individualmente para cada uno de los que componen la coligación requiriéndole la obtención del número de votos, antes señalados, marcados para su candidato a Gobernador, para su insignia, o papeleta íntegra que, como partido aparte y separado de los otros, hubiere ocupado en la papeleta electoral. (Énfasis suplido.)

Ciertamente lo que aquí resolvemos sobre el voto mixto es cónsono con las disposiciones de la Ley Electoral y con los criterios para adjudicar este tipo de voto dispuestos en Regla 81 del Reglamento para las Elecciones Generales. En este sentido se establece en la mencionada disposición legal que:

Cuando un(a) elector(a) que vota mixto hace una marca dentro del cuadrante del nombre de un(a) candidat@ a Gobernador(a) en una columna diferente a la que hizo la marca bajo la insignia del partido político, o escribe un nombre en la columna de nominación directa para gobernador(a); el (la) candidat@ a gobernador(a) directamente marcado o escrito gana un voto y el (la) candidat@ a gobernador(a) que está debajo de la insignia para el cual votó, pierde un voto.

Este mismo criterio aplica para cuando la marca es para un(a) candidat@ a Comisionad@ Residente diferente al que aparece debajo de la insignia bajo la cual votó.

De igual forma, el procedimiento para la adjudicación de papeletas mixtas contemplado en la Regla 64 del Reglamento para las Elecciones Generales establece que:

...

**Las papeletas mixtas de un partido político tienen el efecto de restarle votos a uno o más candidat@s del propio partido político. Dichos votos los ganan candidat@s de otros partidos políticos, o independientes o candidat@s incluidos por el (la) elector(a) bajo Nominación Directa. También pueden ganarlos candidat@s del mismo partido político en los cargos por acumulación cuando es marcada una posición distinta al (a la) primer@ de dich@s legisladores(as).**

...

**Se deberá proceder a sumarle un voto a cada candidat@ que lo gane, anotando un palito ("tally"), en el encasillado de los votos ganados para dich@ candidat@, que aparece en el Informe de Colegio con un símbolo de "más" (+).**

**Tan pronto proceda a sumarle un (1) voto al (a la) candidat@ que lo gana, deberá restarle un (1) voto al (a la) candidat@ que lo perdió, o sea, al (a la) candidat@ del partido político bajo el cual se votó. Esta resta se hará anotando un palito ("tally"), en el encasillado de los votos perdidos, que es el que aparece con un símbolo de "menos" (−) en el Acta de Escrutinio.**

A la luz de lo antes expuesto, podemos concluir que en la papeleta en controversia —donde el elector emitió un voto bajo la insignia del P.I.P. y además le otorgó un voto a favor de Aníbal Acevedo Vilá como candidato a Gobernador y un voto a favor de Roberto Prats Palerm como candidato a Comisionado Residente— el P.I.P. gana un voto para cuantificar como partido principal bajo la fórmula del 7% "del total de votos depositados para todas las insignias de partidos", según dispone la Ley

Electoral de Puerto Rico. Sin embargo, lo pierden sus candidatos a Gobernador y a Comisionado Residente, entiéndase, el Lcdo. Rubén Berrios Martínez y el Dr. Edwin Irizarry Mora. Dichos votos se le suman a los candidatos del P.P.D. a las referidas posiciones.

Este análisis revela claramente el propósito del elector de evitar el efecto automático dispuesto en la ley para las marcas debajo de las insignias. Optaron por otra alternativa vislumbrada en la propia ley con la intención de mantener inscrito el P.I.P. y, simultáneamente, votar por unos candidatos de otro partido, en este caso, del P.P.D. Soslayar esa intención sería contrario al esquema electoral puertorriqueño que claramente aspira a "contar cada voto en la forma y manera en que fue emitido". Art. 1.002 de la Ley Electoral de Puerto Rico.

**El esquema descrito pone de manifiesto cómo, tanto el Reglamento de la Comisión Estatal de Elecciones como el Manual de Procedimientos, Elecciones Generales de 2004, han establecido un mecanismo uniforme para adjudicar los votos en el escrutinio como en el recuento y cómo tratar las papeletas íntegras, recusadas, mixtas y, mixtas recusadas o protestadas. Este mecanismo está predicado en el principio de que todas las papeletas que estén igualmente situadas habrán de recibir el mismo trato y se adjudicarán de la misma manera. De esta forma se evita toda posibilidad de arbitrariedad y de la**

**existencia de estándares divergentes al momento del escrutinio o del recuento; garantizando así el derecho al voto del elector.**

IV.

Aunque no se nos ha planteado directamente por las personas afectadas que los organismos administrativos se hayan negado a tomar las medidas necesarias para acelerar el escrutinio general papeleta por papeleta de los votos totales depositados en las elecciones, a fin de que éste finalice dentro de un período razonable antes de la fecha de ley en que los candidatos electos para los distintos cargos habrán de tomar posesión, ni que se hayan negado a proveer las medidas cautelares para la seguridad y limpieza del proceso de recuento, podemos percibir que existe inseguridad, intranquilidad y desasosiego entre los ciudadanos que se preocupan justificadamente por la integridad del voto depositado por cada elector.

A los fines de traer alguna tranquilidad al Pueblo de Puerto Rico, este Tribunal ordena a la Comisión Estatal de Elecciones, organismo oficial integrado por su Presidente y un Comisionado Electoral en representación de cada uno de los partidos políticos principales, para que, conjuntamente con el escrutinio de los votos, comiencen de inmediato con el recuento de éstos.

Al tomar este curso de acción reafirmamos nuestros pronunciamientos de hace aproximadamente dos décadas atrás, cuando en P.P.D. v. Barreto Pérez, *supra,* en la pág. 387, señalamos que:

> El país está atravesando momentos de gran dificultad y tensión. En estas trabajosas circunstancias, es imprescindible que se actúe con serenidad y sensatez. Lo vital es que triunfe el pueblo entero de Puerto Rico; que no se reduzca la calidad de su democracia ni se mancille la limpieza de sus procesos electorales; que se respeten escrupulosamente nuestra Constitución y nuestras leyes. **Hacemos un llamado al país para mantener en toda ocasión la máxima tranquilidad y mesura**. (Énfasis suplido.)

V.

Por los fundamentos expuestos en la Opinión que antecede, se expide el auto de certificación y resolvemos que es válido aquel voto emitido en la papeleta estatal que contiene una cruz bajo una de las insignias de los partidos y una cruz en cada uno de los encasillados correspondientes a los candidatos a los puestos de Gobernador y de Comisionado Residente de otros partidos políticos. Resolver lo contrario implicaría contravenir el ordenamiento electoral de Puerto Rico en menoscabo al derecho constitucional al sufragio.

De conformidad con lo anterior, y en ausencia de otras circunstancias, se ordena a la C.E.E., a su Presidente, Lcdo. Aurelio Gracia Morales, a los Comisionados Electorales y a todos sus funcionarios, a que cuenten y adjudiquen como válidas todas las papeletas marcadas de esa forma por los electores. Una vez adjudicada las mismas, bajo este mandato, éstas deben ser separadas y debidamente resguardadas a todos los fines legales pertinentes.

**Además, se ordena a la C.E.E., a su Presidente, Lcdo. Aurelio Gracia Morales, a los Comisionados Electorales y a todos sus funcionarios, que comience de inmediato el recuento electoral.**

Se dictará la Sentencia correspondiente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel R. ("Manny") Suárez,
*et al.*

    Demandante-Peticionarios

        v.

                       CT-2004-0004   Certificación

Comisión Estatal de Elecciones,
*et al.*

    Demandados-Recurridos

SENTENCIA

    San Juan, Puerto Rico, a 20 de noviembre de 2004.

    Por los fundamentos expuestos en la Opinión que antecede, se expide el auto de certificación y resolvemos que es válido aquel voto emitido en la papeleta estatal que contiene una cruz bajo una de las insignias de los partidos y una cruz en cada uno de los encasillados correspondientes a los candidatos a los puestos de Gobernador y de Comisionado Residente correspondientes a otros partido políticos.

    De conformidad con lo anterior, y en ausencia de otras circunstancias, se ordena a la Comisión Estatal de Elecciones, a su Presidente, Lcdo. Aurelio Gracia Morales, a los Comisionados Electorales de los partidos políticos, y a todos sus funcionarios, a que cuenten y adjudiquen como válidas todas las papeletas marcadas de esa forma por los electores. Una vez adjudicadas las mismas, bajo este mandato, éstas deben ser separadas y debidamente resguardadas a todos los fines legales pertinentes.

    Además, se ordena a la Comisión Estatal de Elecciones, a su Presidente, Lcdo. Aurelio Gracia Morales, a los Comisionados Electorales de los partidos políticos, y a todos sus funcionarios, que comiencen de inmediato el recuento electoral.

CT-2004-0004                                                    2

        Notifíquese personalmente y por la vía ordinaria a todas las partes.


        Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión de Conformidad. "Los Jueces Asociados señores Rebollo López, Corrada del Río y Rivera Pérez --a pesar de tener preparadas y listas para ser certificadas sendas Opiniones Disidentes, en forma individual, --**no intervienen y no publican sus ponencias, en esta etapa de los procedimientos,** en vista de que en el presente caso se ha radicado una solicitud de remoción ("Notice of Removal") por una de las partes ante la Corte de Distrito Federal para el Distrito de Puerto Rico, solicitud de remoción que por mandato expreso de un estatuto federal aplicable a Puerto Rico, a saber: 28 U.S.C.A. 1446(d), ordena la **paralización automática** de los procedimientos judiciales a nivel local o estatal y priva de jurisdicción al foro local. La actuación de la mayoría resulta inútil, inoficiosa y no vinculante. Los Jueces Asociados señor Rebollo López, Corrada del Río y señor Rivera Pérez, sin embargo, se reservan el derecho a publicar su Opiniones Disidentes individuales una vez la solicitud de remoción sea resuelta en forma definitiva."


                        Patricia Otón Olivieri
                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Manuel R. ("Manny") Suárez
Jiménez; y Otros

    Demandantes-Peticionarios


       vs.                    CT-2004-0004      Certificación


Comisión Estatal de Elecciones
y Otros

    Demandados-Recurridos


Opinión de Conformidad emitida por el Juez Asociado señor FUSTER BERLINGERI.


San Juan, Puerto Rico, a 20 de noviembre de 2004.


I

En el caso de autos comparecen ante nos un grupo de electores que alegan que sus votos mixtos, bajo la insignia del Partido Independentista Puertorriqueño (PIP) y a favor de los candidatos a la Gobernación y a Comisionado Residente del Partido Popular Democrático (PPD) corren el peligro real e inminente de no ser adjudicados. Aducen que el Partido Nuevo Progresista (PNP) y su Comisionado Electoral han objetado a la validez de las papeletas de electores como ellos y que anticipan que se

declare que los votos referidos son nulos, por lo cual no puedan adjudicarse.

Los electores referidos acudieron ante el Tribunal de Primera Instancia, Sala Superior de San Juan, solicitando de ese foro una sentencia declaratoria a su favor. El tribunal de instancia escuchó los planteamientos de las partes peticionarias al igual que los puntos de vista del Comisionado Electoral del PNP. Dicho Tribunal le dio la razón al Comisionado Electoral del PNP y procedió a desestimar el caso de autos sin perjuicio. Dejó pendiente dictar la sentencia por escrito en ese momento.

En virtud de lo anterior, los peticionarios acudieron ante nos en la tarde del 18 de noviembre de 2004 mediante un recurso de Certificación, al amparo de lo dispuesto en el Art. 3.002 (e) de la Ley de la Judicatura de 2003, Ley Núm. 201 del 22 de agosto del 2003 y de la Regla 23 del Reglamento del Tribunal Supremo de Puerto Rico.

En la mañana del 19 de noviembre de 2004 le concedimos un término abreviado a todas las partes recurridas para reaccionar al recurso de Certificación aludido. En la tarde de ese mismo día, ampliamos el término referido a solicitud de algunas de las partes, a fin de darle una mayor oportunidad aún para contestar la Certificación referida.

Al mediodía del 20 de noviembre de 2004, la parte peticionaria, junto a la Comisión Estatal de Elecciones de por sí, y los comisionados electorales del PPD y del PNP comparecieron ante nos y expusieron sus criterios.

Coincido con la parte peticionaria de que el presente caso está revestido del más alto interés público, por estar en cuestión el más fundamental derecho de una democracia, el derecho al voto. En vista de ello, procede que el Tribunal atienda el asunto que se nos ha planteado, a la brevedad posible.

II

Es de conocimiento público la fundamental controversia que se ha suscitado en la Comisión Estatal de Elecciones en cuanto a la validez de los votos mixtos en los cuales un número de electores del país ha votado a la vez bajo la insignia del PIP y para las candidaturas a Gobernador y Comisionado Residente del PPD. Igualmente se conoce la decisión tomada en dicho organismo de guardar dichos votos en sobres separados, para ser adjudicados de forma final y decisiva posteriormente. La controversia referida, además, se ha estado dilucidando por tres días ya ante el Tribunal de Distrito Federal de Puerto Rico. Existe, pues, un estado de incertidumbre sobre la validez y efectividad de los referidos votos mixtos, que debe resolverse de manera definitiva a la brevedad posible. Se trata estrictamente de una controversia de derecho, al amparo de la Constitución y las leyes del Estado Libre Asociado de Puerto Rico, que según las propias decisiones del Tribunal Supremo de Estados Unidos, le compete decidir con finalidad sólo al Tribunal Supremo de Puerto Rico. Es claramente aplicable aquí lo resuelto recientemente por el Tribunal de Circuito de Apelaciones precisamente del Circuito a que pertenece Puerto Rico:

> [A] federal court may not inject itself into the midst of every local electoral dispute. Election law, as it pertains to state and local lections, is for the most part a preserve that lies within the exclusive competence of the state courts. . . [W]ith only a few narrow andwell-defined exceptions, federal courts are not authorized to meddle in local elections. Consequently, they normally may not superintend the step-by-step conduct of local electoral contests or undertake the regulation of "garden-variety election irregularities." Bonas v. Town of North Smithfield, 265 F. 3d 69, 74 (1st Cir. 2001).

Por todo lo anterior y por lo que señalamos más adelante, nos compete asumir jurisdicción sobre este asunto para resolverlo final y definitivamente.[3]

III

Puerto Rico sufre actualmente un lamentable estado de gran desasosiego y tensión por razón de los acontecimientos que suceden a diario en la Comisión Estatal de Elecciones. La grave intranquilidad que se siente en el país no surge meramente porque no se conozca aún con certeza quién resultó electo gobernador en los comicios de la pasada semana, sino sobre todo porque el proceso mismo de contar los votos ha estado plagado de incertidumbre, obstáculos y contratiempos. Tal como señaláramos ya una vez en otra ocasión similar, nuestro sistema de vida democrático sufre cuando los irreconciliables criterios partidistas de los que comparten en determinado momento la función de conducir a los procesos electorales, chocan entre sí al margen de lo que dispone el ordenamiento jurídico. Sobre todo en tal momento, le corresponde a este Tribunal la misión de velar por el fiel acatamiento de la Constitución y las leyes. Báez Galib v. Rosselló González y Otros I, 147 D.P.R. 371 (1999).

---

[3] **En la tarde del 20 de noviembre de 2004 el Comisionado Electoral del PNP presentó ante el Tribunal Supremo de Puerto Rico una solicitud para el traslado al Tribunal Federal de Puerto Rico del recurso de Certificación ante nos.**

**El peticionario del traslado no lo solicitó ante el foro de instancia inicialmente y ahora pretende hacerlo *tardíamente* cuando el caso ya está sometido ante nuestra jurisdicción.**

**Más aun, tratándose de un asunto que surge exclusivamente al amparo de la Constitución y las leyes de Puerto Rico, aún asumiendo que el peticionario del traslado tuviese a su favor una *defensa federal*, ésta no serviría de modo alguno para autorizar dicho traslado, conforme a lo dispuesto expresamente en el estatuto federal sobre traslado, y según lo ha resuelto reiteradamente el Tribunal Supremo de Estados Unidos. Oklahoma Tax Comm'n v. Graham, 489 US 838 (1989); Hernández Agosto v. Romero Barceló, 748 F 2d 1 (1984); Horn v. Rural Community Ins. Servs., 903 F.Supp. 1502 (1995).**

En derecho es claro e incuestionable que el Tribunal Supremo de Puerto Rico es el intérprete máximo de la Constitución del Estado Libre Asociado y de las leyes de Puerto Rico. P.S.P. v. Comisión Estatal de Elecciones II, 110 D.P.R. 538 (1980). Ello incluye evidentemente la interpretación y aplicación de las normas electorales de nuestra Constitución y de nuestras leyes. P.S.P. v. Comisión Estatal de Elecciones, 110 D.P.R. 400, 429 (1980). Véase, además, P.P.D. v. Barreto Pérez, 110 D.P.R. 376 (1980); P.S.P., P.P.D. y P.I.P. v. Romero Barceló, 110 D.P.R. 248 (1980); P.N.P. v. Tribunal Electoral, 104 D.P.R. 741 (1976); y Dávila v. Srio. de Estado, 83 D.P.R. 186 (1960). Sobre todo, tal y como afirmáramos antes en una situación similar,

> **"este Tribunal no puede abstraerse de la confusión general que han generado los cerrados resultados preliminares de las elecciones generales celebradas en Puerto Rico. . ."** P.P.D. v. Barreto Pérez, *supra*, a la pág. 386.

En estos momentos de gran dificultad que atraviesa el país por la incertidumbre sobre los resultados de la contienda electoral, es imprescindible que se proteja lo que antes hemos llamado **"el postulado mayor"** de nuestra Constitución, que

> **"es el carácter democrático de nuestra sociedad donde el poder político emana del Pueblo y se ejerce con arreglo a la voluntad manifiesta en las urnas"**. P.S.P. v. Comisión Estatal de Elecciones, *supra*, pág. 405.

Procede ahora examinar concretamente los asuntos ante la consideración de este Tribunal.


IV

Voto Mixto para Gobernador y Comisionado Residente

La Ley Electoral de Puerto Rico, Ley Núm. 4 de 20 de diciembre de 1977, según enmendada, 16 L.P.R.A. secciones 3001 et seq., claramente vislumbra el **voto mixto** para candidatos a Gobernador y a Comisionado Residente, al disponer en su Art. 5.011 que en toda

elección general habrá una papeleta para los candidatos a Gobernador y a Comisionado Residente, en la cual aparecerá

> **"la divisa de cada partido... con espacio suficiente para que el elector haga su marca bajo dicha insignia y... la lista de los candidatos... teniendo el nombre de cada candidato a su izquierda... espacio suficiente para cualquier marca electoral válida."** 16 L.P.R.A sec. 3211.

Más aun, en el Art 1.003 de dicha Ley se define el término **"papeleta mixta"** de la siguiente manera:

> **"Significará** aquella en que el elector vota marcando en la papeleta electoral, individualmente o en combinación con una marca bajo la insignia de un partido, cualquier combinación de candidatos, sean o no del mismo partido o independientes ..."

Dicha Ley Electoral, además, claramente le otorga un efecto importantísimo al voto mismo bajo la insignia de un partido. **El voto bajo la insignia se cuenta para decidir si un partido político de Puerto Rico es o no un "partido principal"**. Art. 3.001, 16 L.P.R.A. sec. 3101. Es decir, en nuestro país el ordenamiento jurídico reconoce dos tipos de partidos oficiales, a saber: (1) **los partidos por petición**, que son aquello que figuran oficialmente al quedar inscritos mediante determinadas peticiones al efecto; (2) **los partidos principales**, que son aquellos que figuran oficialmente por haber recibido determinado número de votos para su insignia en la elección general precedente. Id.

El voto bajo una insignia, pues, tiene un valor y un efecto propio, **independiente de su significado con respecto a los candidatos a puestos públicos cuyos nombres también aparecen en la papeleta electoral**. 16 L.P.R.A. sec. 3101.

Con arreglo a lo anterior, un voto en la papeleta electoral estatal bajo la insignia de un partido y a la vez a la izquierda del nombre de un candidato a Gobernador de otro partido y a al izquierda del nombre de un candidato a Comisionado Residente de otro partido, **es un voto mixto válido y efectivo**, a favor de la

inscripción del partido cuya insignia se votó y a favor también de los candidatos a Gobernador y a Comisionado Residente favorecidos. Tal voto mixto tiene, pues, **tres efectos y así debe contarse en el escrutinio**.

En efecto, el Reglamento para las Elecciones Generales y Escrutinio General de 2004, expresa y claramente dispone que el voto mixto referido ha de adjudicarse tal y como lo hemos indicado en el párrafo anterior de esta Opinión. Dicho Reglamento, en su R.81, ordena lo siguiente en lo pertinente:

> **R.81. Criterio para Adjudicar Votos Mixtos en la Papeleta Estatal**
>
> Cuando un(a) elector(a) que vota mixto hace una marca dentro del cuadrante del nombre de un(a) candidato(a) a Gobernador(a) en una columna diferente a la que hizo la marca bajo la insignia del partido político... el (la) candidato(a) a gobernador(a) directamente marcado gana un voto y el (la) candidato(a) a gobernador(a) que está debajo de la insignia para el cual votó, pierde un voto.
>
> Este mismo criterio aplica para cuando la marca es para un(a) candidato(a) a Comisionado(a) Residente diferente al que aparece debajo de la insignia bajo la cual votó.

Más aun, las **instrucciones sobre cómo votar** que aparecía en la propia papeleta electoral estatal le indicaban al votante como emitir un voto mixto, en los mismos términos que ya hemos señalado. En lo pertinente, la instrucción era la siguiente:

**COMO VOTAR MIXTO**

Para votar mixto, se hace una marca (X) válida debajo de la insignia del partido de su preferencia y se hace una marca al lado de otro candidato fuera de la columna de su partido... Tenga en cuenta que sólo puede votar por un (1) candidato a Gobernador y por un (1) candidato a Comisionado Residente.

Finalmente, debe tenerse en cuenta que la propia Comisión Estatal de Elecciones, como parte de su extensa orientación a los votantes del país en todos los medios de comunicación, divulgó lo siguiente sobre el voto mixto:

<u>**CÓMO VOTO MIXTO?**</u>

**Si además de votar bajo la insignia de un partido,** tienes preferencia por **uno o más candidatos de otros partidos** para **uno o más cargos**. . .podrás hacer una marca válida en el espacio en blanco que aparece al lado izquierdo del nombre del candidato que prefieras fuera de la columna de tu partido. También puedes votar por otras personas. . .

A la luz de todo lo anterior, es **<u>incuestionable</u>** que, al igual que en elecciones anteriores, en los comicios del 2 de noviembre de 2004 los electores del país tenían la opción de votar mixto en la llamada papeleta estatal, haciendo una cruz bajo la insignia del partido de su preferencia y votando también por los candidatos a Gobernador y a Comisionado Residente de otros partidos.

Por ello es incuestionable también que son enteramente válidos y deben adjudicarse los votos mixtos que están en cuestión en este caso, conocidos como los "pivazos". De esa forma no sólo acatamos las claras disposiciones estatutarias y reglamentarias de Puerto Rico sobre el particular, sino que también honramos la preeminente voluntad de los electores en cuestión, cuyos derechos electorales son del más alto rango en nuestro ordenamiento jurídico.

V

<u>El recuento electoral</u>

Los peticionarios nos piden también que sus votos mixtos se adjudiquen inmediatamente durante el escrutinio general que realiza la Comisión Estatal de Elecciones y **<u>antes del posible recuento electoral</u>**. Es de conocimiento público de que algunos sectores políticos quisieran **<u>evitar</u>** que ocurra un recuento

electoral, por lo que confían que durante el escrutinio el candidato del PPD para Gobernador obtenga votos suficientes como para que no entre en vigor la disposición de ley que requiere el recuento si el candidato aludido tiene una ventaja de menos de .05% de los votos emitidos para la candidatura a Gobernador.

Los votos mixtos en cuestión deben adjudicarse a la brevedad posible. **Pero, ello no podrá tener el efecto de soslayar el recuento electoral**. **El recuento electoral es una necesidad constitucional ineludible**. Las circunstancias de los comicios del 2004, de unas elecciones muy disputadas, con resultados muy cerrados para la candidatura a Gobernador, ha dado lugar a una situación en la que cunden las sospechas y las recriminaciones de lado y lado. Ningún escrutinio por bueno que sea conjurará las dudas y la incertidumbre sobre quién resultó electo, por lo que el recuento es el único medio capaz de lograr una relativa paz en el país después de la contienda electoral, y de lograr la restauración de la confianza pública en el sistema electoral. Al igual que en 1980 cuando el país encaró una situación similar, existe hoy "inseguridad, intranquilidad y desasosiego entre los ciudadanos que se preocupan justificadamente por la integridad del voto depositado por cada elector." P.P.D. v. Barreto Pérez, *supra*, a la pág. 387.

Por otro lado, la posposición del recuento hasta que haya terminado el escrutinio general que con tantos tropiezos se realiza ahora, crea el riesgo real de que no se pueda terminar el recuento a tiempo para la inauguración del nuevo Gobernador, el 2 de enero de 2005, como lo ordena nuestra Constitución. De materializarse tal riesgo no sólo se menoscaba el esquema ordinario de la Constitución para la instalación del nuevo Gobernador, sino que se crearía otra crítica situación de irregularidad que engendraría más disputas, y más desasosiego en

el país, agravando la ominosa intranquilidad existente, y desbaratando aún más la confianza pública en el sistema de Derecho y los procesos políticos. No podemos permitir que todo ello ocurra, ni que se ponga aun en más riesgo nuestro sistema de vida democrático.

Finalmente, no hay duda alguna que el recuento es el medio más seguro para garantizar que prevalezca la voluntad mayoritaria de los votantes, que es la mayor consideración de orden constitucional relativa a las elecciones.

Por todo lo anterior, tal como lo hicimos antes en 1980, procede que ordenemos que la Comisión Estatal de Elecciones comience de inmediato el recuento electoral. P.P.D. v. Barreto Pérez, *supra*.

VI

Por los fundamentos expuestos, estoy conforme con la Opinión Per Curiam y la Sentencia del Tribunal en el caso de autos mediante la cual se instruye a la Comisión Estatal de Elecciones que proceda sin dilación a adjudicar según corresponda los votos mixtos en cuestión en el caso de autos; y se le ordena a que comience de inmediato el recuento electoral.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO