Voto particular de conformidad emitido por la
Jueza Aso-ciada Señora Pabón Charneco,
al cual se une el Juez Asociado Señor Estrella Martínez.
Estoy conforme con la resolución que antecede. Previo a nuestra decisión de paralizar los efectos de la Ley Núm. *93 160-2013, miles de servidores públicos indispensables para el sano desarrollo de esta sociedad, nuestros maestros, se encontraban en una cruel incertidumbre: tomar la decisión irrevocable de acogerse al retiro antes del 15 de febrero de 2014 o continuar trabajando bajo un nuevo sistema. Es por eso que, dada las circunstancias particulares del caso de autos, fue acertada nuestra decisión de paralizar los efec-tos del estatuto en cuestión y ordenar el trámite extraordi-nario del caso de epígrafe.
No obstante, toda vez que varios miembros de este Tribunal echan mano a la soga de tecnicismos asfixiantes para darle la espalda a nuestra clase magisterial, me veo obligada a emitir estas breves expresiones.
i — I
No es la primera vez que este Tribunal toma medidas extraordinarias para resolver casos de alto interés público. Véase Suárez v. C.E.E. I, 163 DPR 347 (2004). Irónicamente, en aquel momento se contó con la anuencia de los compañeros que hoy disienten. Es lamentable que los com-pañeros disidentes hayan optado por refugiarse entre las líneas de formalidades procesales rígidas para echarle la soga al cuello a nuestros servidores públicos. La verdad es que estos intentan camuflar una metodología adjudicativa que nuevamente parece reducirse a que resolverán depen-diendo del color del cristal con que miraron la controversia. Véase Alvarado Pacheco y otros v. ELA, 188 DPR 594 (2013), opinión de conformidad emitida por la Jueza Asociada Señora Pabón Charneco. Así pues, se siguen añadiendo capítulos a la saga que no hace mucho presagié. Véase Trinidad Hernández et al. v. ELA et al., 188 DPR 828 (2013), opinión disidente emitida por la Jueza Asociada Señora Pabón Charneco. Nuevamente, al igual que lo censuré en Alvarado Pacheco y otros v. ELA, supra, no deja de asombrarme la inconsistencia de varios integrantes de *94 este Tribunal. Lamento que estos compañeros se escondan detrás de un escudo de conveniencia y aparenten conver-tirse en una extensión de las ramas políticas de gobierno.
II
Por otro lado, en su voto particular disidente, el Juez Presidente Señor Hernández Denton elabora prolongadamente en cuanto a los requerimientos de nuestro ordenamiento para la expedición de una orden de injunction o injunction preliminar. No obstante, como muy bien se discute en la Resolución que antecede, el Juez Presidente erró en su interpretación de la doctrina de recursos extraordinarios en nuestro ordenamiento. Además, también olvida —o quiere olvidar— que las partes en el caso de autos lo que presentaron ante este Foro fue una moción en auxilio de nuestra jurisdicción. Recientemente reiteramos que “una moción para solicitar a un tribunal un remedio en auxilio de su jurisdicción es, en esencia, un llamado a la utilización del poder inherente que tiene todo tribunal para constituir los remedios necesarios que hagan efectiva su jurisdicción y que eviten fracasos en la administración de la justicia”. García López y otros v. E.L.A., 185 DPR 371, 377 (2012). Véanse, además: Pantoja Oquendo v. Mun. de San Juan, 182 DPR 101 (2011); San Gerónimo Caribe Project v. A.R.Pe., 174 DPR 640, 654 (2008); Misión Ind. P.R. v. J.P. y A.A.A., 142 DPR 656, 678 (1997). Así pues, se trata de un remedio en equidad que emiten los tribunales en el sáno ejercicio de su discreción y que “goza de características afines a otros de similar naturaleza, como lo son el entredicho provisional y el ‘injunction’ preliminar”. (Énfasis suplido). Misión Ind. P.R. v. J.P. y A.A.A., supra, pág. 678.
Si bien es cierto que para emitir un remedio en auxilio de jurisdicción se consideran características análogas a las de un injunction, los remedios en equidad que se emiten *95 bajo un auxilio de jurisdicción se fundamentan en el poder inherente de los tribunales apelativos y no en los formalismos de los requisitos estatutarios exigidos por el Art. 678(3) del Código de Enjuiciamiento Civil, 32 LPRA sec. 3524, y las Reglas 57.2(b) y 57.5 de Procedimiento Civil, 32 LPRA Ap. V. Entiendo que los compañeros disidentes en este caso erraron al analizar la controversia de autos bajo la lupa de tecnicismos procesales, soslayando sin más el principio normativo que ante una moción en auxilio de jurisdicción, los tribunales tienen el poder inherente para conceder cualquier remedio que en equidad proceda. Véase García López y otros v. E.L.A., supra, pág. 382. En este caso particular, ese remedio redundó en certificar el caso de autos y paralizar los efectos de la Ley Núm. 160-2013 con el fin de evitar que miles de maestros se vieran forzados a tomar una decisión abrupta y permanente sobre su futuro económico antes que se dilucidara la constitucionalidad del estatuto.
Por otro lado, en su disenso el Juez Presidente afirma que al amparo del inciso- (a) de la See. 4 del estatuto en cuestión, este Tribunal tiene la facultad de ordenar a la Oficina de Gerencia y Presupuesto a que prorrogue la fe-cha límite para que los maestros notifiquen su renuncia. En primer lugar, me parece totalmente errada esta aseveración. No me parece que este Tribunal tenga autori-dad para ordenar a la Oficina de Gerencia y Presupuesto a que realice una función discrecional. Esto sería una intro-misión indebida de la Rama Judicial con las otras ramas de gobierno que laceraría los principios más básicos de la separación de poderes. Por eso, para lograr el objetivo que la disidencia propone hay que utilizar la facultad judicial de suspender el efecto de la ley, y con ello, las responsabi-lidades discrecionales que la ley señala. En segundo lugar, resulta que hasta la disidencia reconoce que es necesario conceder un remedio en equidad similar a la paralización de los efectos de la Ley Núm. 160-2013. Me parece que la *96 disidencia es inconsistente en sus aseveraciones con rela-ción al poder de este Foro para conceder remedios en equidad. Paradójicamente, la disidencia propone lo que critica.
Añade, además, que dado a que pronto contaremos con el Informe del Comisionado Especial no hay necesidad de paralizar los efectos de la ley dado que en ese marco temporal tendremos la oportunidad de proveer un remedio oportuno antes del 15 de febrero de 2014. A pesar de que este Tribunal hará todo lo posible por atender este asunto con la celeridad que amerita, lo cierto es que nos encontra-mos ante un caso extremadamente complejo y técnico. Así pues, paralizar los efectos de la Ley Núm. 160-2013 nos permitirá analizar sosegadamente el caso de autos sin la presión indebida de un término que podría impedir que ejerzamos nuestra función revisora con la rigurosidad ex-haustiva que merece toda controversia que llegue a nues-tra consideración. Nuestros maestros merecen como mí-nimo esa paz mental.
Por otro lado, en su Urgente Moción de Reconsideración, el Estado arguye que la orden emitida por este Tribunal que paralizó los efectos de la Ley Núm. 160-2013 “ha tenido un efecto adverso sin precedentes en la estabilidad económica del país”. No sería la primera vez que rechazo la utilización de este tipo de argumento supra legal como uno a ser considerado por este Tribunal al momento de evaluar la validez constitucional de un estatuto. Insisto que “esa es una consideración exógena al Derecho que no debe guiar la decisión de los casos de autos. Si el principio de independencia judicial significa algo es que ese tipo de amenaza no puede empañar la labor constitucional de los tribunales en Puerto Rico”. Trinidad Hernández et al. v. ELA et al., supra, pág. 844, opinión disidente emitida por la Jueza Asociada Señora Pabón Charneco.
La disidencia se hace eco de la alegación de la parte recurrida. Al parecer, para los Jueces disidentes el único *97 resultado aceptable es la desestimación fast track del pleito. De otro modo, siguiendo su lógica, el “efecto adverso sin precedentes en la estabilidad económica del país” sería mayor. Es evidente, entonces, que la disidencia ya adjudicó este caso a favor del Gobierno y en contra de los maestros peticionarios. Solo así se explica su inconsistencia al opo-nerse a la suspensión temporal de los efectos de la Ley Núm. 160-2013.
La acción responsable tomada por este Tribunal está en-marcada en la seriedad que requiere afrontar las circuns-tancias históricas de nuestra Isla. Procedía la paralización y no la improvisación.
III
En fin, reafirmo mi conformidad con la Resolución que antecede. Los miles de empleados públicos que han escogido esta noble profesión y que día a día ejercen la encomiable labor de educar a las futuras generaciones del país merecen mucho más que permanecer en un estado de desa-sosiego mientras esta Curia atiende la constitucionalidad de la ley impugnada. Así pues, me hago eco de las expresiones emitidas por el compañero Juez Asociado Señor Es-trella Martínez en su voto particular de conformidad de 14 de enero de 2014, en las cuales destaca la necesidad imperiosa de que “los maestros y maestras conozcan el desenlace final de la validez legal o inconstitucionalidad del estatuto [...]”. AMPR et als. v. Sist. Retiro Maestros I, 190 DPR 77, 82 (2014).
Rechazo la posición de la disidencia porque convertiría a la Rama Judicial en una marioneta a la merced de las ra-mas políticas de gobierno. No puedo avalar un proceder que obliga a nuestros empleados públicos a enredarse en un nudo gordiano y a ser víctimas de la nefasta inconsis-tencia de varios miembros de este Tribunal. Por todo lo antes dicho, estoy conforme con la Resolución que hoy emitimos.