```
Estado Libre Asociado de Puerto Rico
        TRIBUNAL DE APELACIONES
            PANEL ESPECIAL[1]
```

| ANA M. MALDONADO FLORES<br><br>Demandante-Apelante<br><br><br>v.<br><br><br>ADECCO PERSONNEL SERVICES, INC.<br><br>Demandada-Apelada | KLAN202500329 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Civil Núm. PO2023CV01237<br><br>Sala: 604<br><br>Sobre: Sentencia Declaratoria, Interferencia Torticera, Daños |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro.

Salgado Schwarz, Carlos G. Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 20 de junio de 2025.

Comparece ante nos la señora Ana M. Maldonado Flores ("Sra. Maldonado" o "Apelante") y nos solicita que revoquemos la Sentencia emitida el 19 de marzo de 2025[2] por el Tribunal de Primera Instancia, Sala Superior de Ponce ("foro de instancia" o "foro recurrido"). Mediante dicha Sentencia, el foro recurrido declaró *Ha Lugar* la solicitud de desestimación presentada por Adecco y desestimó la Demanda en su totalidad.

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones. Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron el correspondiente recurso anterior (KLAN202400195).
[2] Notificada el 20 de marzo de 2025.

Número Identificador
SEN2025 _____

Por los fundamentos que exponemos a continuación, **confirmamos** la Sentencia recurrida.

-I-

El 1 de mayo de 2023, la Sra. Maldonado presentó una *Demanda*[3] en la que solicitó que el foro de instancia emitiera una sentencia declaratoria respecto a una cláusula de no competencia que firmó con Adecco Personnel Services, Inc. ("Adecco" o "Apelada"). El 15 de septiembre de 2023, la Apelada presentó una moción solicitando poner en vigor un acuerdo transaccional que ponía fin a la controversia. De conformidad con ello, el 19 de septiembre de 2023, el foro primario le impartió su aprobación al acuerdo y emitió una Sentencia con perjuicio. Así las cosas, el 1 de marzo de 2024, la Apelante acudió ante este Foro mediante recurso de apelación indicando que no había aceptado los términos del acuerdo. Luego de un análisis de la prueba presentada, resolvimos que, en efecto, el acuerdo no se había perfeccionado, por lo que revocamos el dictamen emitido y ordenamos la continuación de los procedimientos.[4]

Posteriormente, el 18 de noviembre de 2024, Adecco presentó su *Contestación a Demanda*[5]. Entre las defensas afirmativas de la Apelada, esta señaló que la causa de acción de sentencia declaratoria se tornó académica, debido a que el Acuerdo en cuestión ya no se encontraba vigente por haber transcurrido el término de doce (12) meses. Ese mismo día, Adecco presentó una *Moción de Desestimación Parcial*[6] alegando que la controversia no

---

[3] Véase Apéndice del recurso apelativo, págs. 1-5.
[4] Véase KLAN202400195.
[5] *Íd.*, a las págs. 10-17.
[6] *Íd.*, a las págs. 18-22.

era justiciable debido a que el Acuerdo perdió vigencia, por lo que la causa de acción se había tornado académica. Así las cosas, el 26 de noviembre de 2024, la Apelante presentó una *Oposición a Moción en Solicitud de Desestimación Parcial*[7]. En síntesis, la Sra. Maldonado reclamó una acción por intervención torticera alegando que los actos de la Apelada "*fueron ilegales e injustificados, causándole un daño tangible que no está relacionado con la ejecución de las cláusulas de no competencia, sino con la interferencia indebida de Adecco en sus oportunidades laborales.*"[8]

Posteriormente, el 3 de diciembre de 2024, Adecco presentó una *Moción de Desestimación Total*[9]. En esa ocasión, la Apelada solicitó la desestimación de la totalidad de la reclamación por carecer la Demanda de alegaciones suficientes que justifiquen la concesión de un remedio. El 30 de diciembre de 2024, la Apelante presentó una *Moción en Oposición a Solicitud de Desestimación Total*[10] en la que alegó que se cumplen con todos los elementos para configurar una causa de acción por intervención torticera. Al día siguiente, el 31 de diciembre de 2024, la Apelada presentó una *Breve Réplica a Oposición a Moción de Desestimación Total*[11], en la que señaló que, al no haber un contrato con término fijo, no se cumplen los requisitos para la causa de acción de interferencia torticera. El 19 de marzo de 2025[12], el foro de instancia emitió una *Sentencia*[13] en la que desestimó la Demanda.

---

[7] *Íd.*, a las págs. 24-33.
[8] *Íd.*, a la pág. 25.
[9] *Íd.*, a las págs. 34-57.
[10] *Íd.*, a las págs. 59-65.
[11] *Íd.*, a las págs. 66-70.
[12] Notificada el 20 de marzo de 2025.
[13] *Íd.*, a las págs. 73-90.

Inconforme con dicha determinación, el 21 de abril de 2025, la Sra. Maldonado acudió ante nos mediante recurso de apelación[14] e hizo los siguientes señalamientos de error:

> PRIMERO: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LA PARTE DEMANDANTE NO ESTABLECIÓ HECHOS MEDULARES QUE ESTABLEZCAN UNA RECLAMACIÓN PLAUSIBLE QUE PUEDA CONCEDER UN REMEDIO A SU FAVOR Y DESESTIMAR LA DEMANDA SIN CONSIDERAR QUE EXISTE CAUSA DE ACCIÓN DE LA QUE PUEDE DISPONER DEL CASO.

> SEGUNDO: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LA DEMANDANTE NO PODÍA DEMANDAR A ADECCO POR ACTUACIONES TORTICERAS.

> TERCERO: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE LA SENTENCIA DECLARATORIA NO PUEDE COMBINARSE CON UN RECLAMO DE DAÑOS Y PERJUICIOS.

-II-

**A. Desestimación**

Las alegaciones en una demanda tienen el propósito de presentarle al tribunal los hechos en que las partes apoyan o niegan el derecho en controversia, precisar aquellos que las partes acepten como ciertos y señalar aquellos que consideran están en controversia y sobre lo cuales se presentará prueba para que el tribunal formule las conclusiones procedentes.[15] La Regla 6.1 de Procedimiento Civil, procedente de la Regla 8 de Procedimiento Civil federal[16], establece la norma sobre la formulación de alegaciones en una demanda y dispone lo siguiente:

> Una alegación que exponga una solicitud de remedio contendrá:

---

[14] Las reglas citadas por la Apelante en la parte II del recurso, "Jurisdicción y Competencia", son las correspondientes a las revisiones administrativas y no las que corresponden a los escritos apelativos.
[15] R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho procesal civil, 6ª ed. Rev., San Juan, Ed. LexisNexis de Puerto Rico, 2017, pág. 279.
[16] Fed. R. Civ. P. 8.

(1) Una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y

(2) Una solicitud del remedio a que crea tener derecho. Podrán ser solicitados remedios alternativos o de diversa naturaleza.[17]

Nuestro más alto foro ha determinado que al amparo de la Regla 6.1 de Procedimiento Civil, "*no tienen que exponerse detalladamente en la demanda todos los hechos que dan base a la reclamación.*"[18] "*[A] la parte que persigue un remedio solo [sic] se le requiere presentar en su alegación una reclamación redactada de forma general.*"[19]

> La Regla 6.1, 2009, al igual que su equivalente federal, impone al demandante una obligación relativamente leniente. Un demandante cumple con la exigencia de la regla al notificar al demandado de su reclamación y del remedio de tal modo que permita al demandado formular su contestación. […] No obstante, si bien el deber que se le exige al demandante es bastante liberal y se le requiere brevedad en su exposición, la alegación debe aún contener la suficiencia fáctica que se necesita para que el demandado reciba una adecuada notificación sobre lo que se le reclama y la base que la sustenta.[20]

Por lo tanto, la información contenida en una demanda "*debe estar a tono con los requisitos mínimos de notificación según requiere el debido proceso de ley.*"[21]

A diferencia de la normativa en Puerto Rico, el Tribunal Supremo federal descartó el análisis laxo sobre las alegaciones. En los casos de *Bell Atlantic Corp. v. Twombly*[22] y *Ashcroft v. Iqbal*[23], el foro federal pautó y extendió a toda reclamación civil federal la normativa de "plausibilidad". "*El estándar de plausibilidad*

---

[17] 32 LPRA Ap. V, R. 6.1.
[18] *León Torres v. Rivera Lebrón*, 204 DPR 20, 40 (2020).
[19] J.A. Echevarría Vargas, Procedimiento civil puertorriqueño, 3ª ed. Rev. Bogotá, Ed. Nomos S.A., 2023, pág. 95
[20] R. Hernández Colón, *supra*, pág. 287.
[21] *León Torres v. Rivera Lebrón*, supra, pág. 40.
[22] *Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007).
[23] *Ashcroft v. Iqbal*, 556 US 662 (2009).

*requiere que las alegaciones contengan una relación fáctica suficiente, que aceptada como cierta, establezca que la reclamación del remedio es plausible de su faz.*"[24] Este estándar no fue adoptado expresamente por el Comité Asesor Permanente que revisó las Reglas de Procedimiento Civil de 1979[25]. Sin embargo, ante los cambios suscitados por el Tribunal Supremo federal, como consecuencia de los casos de *Ashcroft* y *Bell Atlantic*, el Comité "*adoptó una solución, la cual aunque no incorpora el estándar de plausibilidad, se encamina en la misma dirección.*"[26] En particular, el Profesor Hernández Colón hace hincapié en el cambio al lenguaje de la Regla 6.1 de Procedimiento Civil entre el 1979 y el 2009. Bajo las reglas de 1979, la Regla 6.1 disponía que una alegación contendrá "*una relación sucinta y sencilla de la reclamación demostrativa de que el peticionario tiene derecho a un remedio*". Sin embargo, en el 2009, la Regla 6.1 fue cambiada para disponer que una alegación contendrá "*una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio*"[27]. Por lo tanto, aunque un demandante no tenga que alegar todos los hechos específicos que responsabilicen a un demandado, sí debe alegar hechos que no sean hipotéticos y que no estén basados en conclusiones de derecho.

Por su parte, la Regla 10.2 de Procedimiento Civil[28] reconoce como defensa que la parte demandante haya dejado "*de exponer una reclamación que justifique la*

---

[24] R. Hernández Colón, *supra*, pág. 287.
[25] 32 LPRA Ap. III.
[26] R. Hernández Colón, *supra*, págs. 280-281.
[27] 32 LPRA Ap. V, R. 6.1.
[28] 32 LPRA Ap. V, R. 10.2.

*concesión de un remedio".*[29] *"Al resolver una moción de desestimación por ese fundamento, el tribunal toma como ciertos todos los hechos alegados e interpreta las aseveraciones de la demanda en la forma más favorable posible para el demandante formulando en su favor todas las inferencias que puedan asistirle".*[30] *"Solo [sic] se podrán entender como ciertos aquellos hechos que fueran correctamente alegados sin considerar las alegaciones con contenido hipotético".*[31] Esto es, el tribunal debe eliminar del análisis las conclusiones legales y los elementos de la causa de acción apoyados por aseveraciones conclusivas.[32] A tales efectos, los foros judiciales deben razonar si, a la luz de la situación más favorable al demandante, y resolviendo las dudas a favor de este, la demanda es suficiente para constituir una reclamación válida.[33]

A pesar de que las reglas de Procedimiento Civil de 2009 no adoptaron el estándar de plausibilidad de manera expresa, nuestro Tribunal Supremo se ha expresado a favor de la adopción de la doctrina federal.[34] A inicios del 2024, mediante voz del Juez Asociado Señor Martínez Torres, el Tribunal Supremo pautó la normativa sobre una desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil. Primero *"los tribunales están*

---

[29] *Íd.*, R. 10.2 (5).
[30] R. Hernández Colón, *supra,* pág. 307.
[31] J.A. Echevarría Vargas, *supra*, pág. 131.
[32] R. Hernández Colón, *supra*.
[33] *González Méndez v. Acción Social*, 196 DPR 213, 235 (2016).
[34] [L]o que sí es necesario determinar es si los hechos alegados en la demanda establecen de su faz una reclamación que sea plausible y que, como tal, justifique que el demandante tiene derecho al remedio que busca o, al menos, a parte de este. Si se determina que los hechos alegados "no cumple[n] con el estándar de plausibilidad, el tribunal debe desestimar la demanda". Lo que se busca con el análisis de plausibilidad es el "no permitir que una demanda insuficiente proceda bajo el pretexto de que con el descubrimiento de prueba pueden probarse las alegaciones conclusorias". *Trinidad Hernández v. ELA*, 188 DPR 828, 851 (2013). (Opinión disidente del Juez Asociado Señor Kolthoff Caraballo). (Citas omitidas).

*obligados a tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente*".[35] "*Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio*".[36] Ahora, "*si tras este análisis el Tribunal aún entiende que no se cumple con el estándar de plausibilidad, entonces debe desestimar la demanda, pues no puede permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba*".[37]

En síntesis, "*[a]unque las aseveraciones en una alegación deben ser concisas y se deben de considerar como ciertas ante una moción de desestimación, no pueden estar fundadas en generalidades, conclusiones de derecho o recitación de derecho aplicable*".[38] La falta de hechos que plausiblemente apoyen los remedios solicitados debe resultar en la desestimación del recurso.[39]

### B. Sentencia Declaratoria

La sentencia declaratoria es un remedio que permite al tribunal declarar derechos, estados y otras relaciones jurídicas, aunque existan otros remedios disponibles.[40] La solicitud de sentencia declaratoria tiene como resultado una decisión judicial sobre cualquier divergencia en la interpretación de la ley.[41]

---

[35] *Costas Elena v. Magic Sport Culinary Corp.*, 213 DPR 523, 533.
[36] *Íd.*
[37] *Íd.*, a la pág. 534.
[38] C. Zeno Santiago, Sumario procedimiento civil puertorriqueño, 1ª ed., San Juan, Ed. SITUM, 2023, pág. 74.
[39] *Íd.*, págs. 74-75. Véanse, además, R. Hernández Colón, *supra,* pág. 287; *Costas Elena v. Magic Sport Culinary Corp.*, supra; *Bell Atlantic Corp. v. Twombly*, supra; *Ashcroft v. Iqbal*, supra.
[40] 32 LPRA Ap. V, R. 59; *Mun. Fajardo v. Srio. Justicia et al.*, 187 DPR 245, 254 (2012).
[41] 32 LPRA Ap. V, R. 59.2.

Sin embargo, sólo se emite cuando existe una controversia sustancial entre partes con intereses legales adversos con el propósito de disipar la incertidumbre jurídica.[42] Además, una vez dictada tiene la misma eficacia y vigor que cualquier otro fallo judicial.

Por su parte, la Regla 59.2 de Procedimiento Civil dispone que cualquier persona con interés en una escritura, testamento, contrato escrito u otro documento constitutivo de contrato, o cuyos derechos fuesen afectados por un estatuto, estado u otras relaciones jurídicas, ordenanza municipal, contrato o franquicia, puede solicitar una decisión sobre cualquier divergencia en la interpretación o validez de dichos documentos. Asimismo, puede solicitar que se dicte una declaración sobre los derechos, estados u otras relaciones jurídicas derivadas de estos documentos.[43]

Cabe resaltar que el foro primario puede conceder remedios adicionales basados en una sentencia declaratoria, siempre que sean necesarios o adecuados.[44] De esta forma, la sentencia declaratoria representa un mecanismo procesal de carácter remedial que permite dilucidar ante los tribunales los méritos de cualquier reclamación que implique un peligro potencial en contra de una parte.[45]

Por otro lado, la sentencia declaratoria propicia la seguridad y certidumbre en las relaciones jurídicas,

---

[42] *Mun. Fajardo v. Srio. Justicia et al.*, supra, a la pág. 254.
[43] *Íd.*
[44] 32 LPRA Ap. V, R. 59.4.
[45] *Suárez v. C.E.E. I*, 163 DPR 347, 354 (2004); *Charana v. Pueblo*, 109 DPR 641, 653 (1980).

tanto en el ámbito público, como en el privado.[46] No obstante, está sujeta a una balanceada discreción del tribunal y debe realizarse "*dentro de ciertas fronteras, contornos y postulados jurídicos.*"[47] Por lo tanto, antes de dictar una sentencia declaratoria, el foro primario debe sopesar los intereses públicos y privados de las partes, la necesidad de emitir el recurso y el impacto que tiene sobre lo reclamado, por lo que "*debe demostrarse que los intereses de la justicia serían bien servidos y que la sentencia que se dicte sea efectiva y adecuada.*"[48]

### C. Interferencia Torticera

Nuestro ordenamiento jurídico reconoce la existencia de una causa de acción por interferencia torticera con una relación contractual.[49] Los elementos de dicha causa de acción son los siguientes: (1) la existencia de una relación contractual con la cual interfiera un tercero (si lo que se afecta es una expectativa o una relación económica provechosa sin existir contrato, no procede la acción); (2) debe mediar culpa, es decir, el tercero debe actuar intencionalmente, con conocimiento de la existencia del contrato y que, al interferir con este, se causaría perjuicio; (3) la existencia de un daño sufrido por el actor; y (4) un nexo causal entre el acto culposo del tercero y el incumplimiento del contrato. Basta que el

---

[46] *Romero Barceló v. E.L.A.,* 169 DPR 460, 507 (2006); *Sánchez et al. v. Srio de Justicia et al.*, 157 DPR 360, 410 (2002); *Moscoso v. Rivera*, 76 DPR 481, 488 (1954).
[47] *Charana v. Pueblo*, supra, a la pág. 653; *Moscoso v. Rivera*, supra, pág. 493.
[48] *Moscoso v. Rivera*, supra, pág. 494.
[49] *Gen. Office Prods. V. A.M. Capen's Sons*, 115 DPR 553 (1984).

tercero hubiera provocado o contribuido a la inejecución o incumplimiento del contrato.[50]

Por otro lado, bajo la doctrina anglosajona se ha resuelto que cuando existe una relación obrero-patronal u otra de índole similar, la cual es terminable a voluntad de las partes, la interferencia de un tercero con dicha relación estará cobijada por lo que los tratadistas norteamericanos han llamado la "teoría del privilegio de la competencia".[51] Al amparo de esta teoría, en los casos de inexistencia de contratos a término fijo, la relación contractual interferida adquiere las dimensiones de una expectativa de una relación económica provechosa. Nuestro más alto foro ha señalado que tal relación no es suficiente para iniciar una acción por interferencia culposa con las relaciones contractuales de terceros.[52]

-III-

En el caso de epígrafe, la Sra. Maldonado alega que Adecco interfirió de manera torticera en su relación contractual entre esta y MG Staffing Group, por lo que fue despedida de su empleo. A raíz de lo anterior, la Apelante presentó una Demanda en daños y perjuicios contra Adecco. Luego de haber revisado el expediente de marras junto con el derecho aplicable, nos encontramos en posición de resolver. Por estar íntimamente relacionados, atenderemos los señalamientos de error de manera conjunta.

---

[50] *Jusino et als. v. Walgreens*, 155 DPR 560, 575-576 (2001); *Dolphin Int'l of P.R. v. Ryder Truck Lines*, 127 DPR 869, 879 (1991).
[51] *Dolphin Int'l of P.R. v. Ryder Truck Lines,* 127 DPR 869, 883 (1991).
[52] *Íd.*

Según se desprende de la Demanda de epígrafe, las alegaciones sobre interferencia torticera son las siguientes:

> 13. *Adecco* sabía que, al menos antes del 30 de enero de 2023, la demandante tenía un contrato vigente con *MG Staffing Group*.
>
> 14. *Adecco* no era parte en el contrato entre la demandante y *MG Staffing Group*.
>
> 15. *Adecco*, mediante su interferencia torticera, ocasionó que *MG Staffing Group* despidiese a la demandante de su trabajo.
>
> 16. *Adecco* sabía o debió saber que, al interferir con un contrato, le causaría perjuicio a la demandante.
>
> 17. La demandante sufrió daños por la interferencia torticera de *Adecco* con su contrato con *MG Staffing Group.*
>
> 18. Estos daños fueron producto de la actuación culposa de *Adecco*.[53]

Como regla general, en nuestro ordenamiento jurídico "*[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo*"[54]. Ahora bien, dentro de dicha norma nos corresponde evaluar la modalidad de la que se trata.

En el presente caso nos encontramos ante alegaciones por interferencia torticera. Según discutimos en el acápite II de este escrito, la causa de acción por interferencia torticera requiere que haya un contrato a término fijo con el cual interfiera un tercero y no una mera expectativa laboral. En la Demanda no existe alegación alguna respecto a este asunto. Por su parte, de la copia del contrato que incluyó Adecco en su *Moción de Desestimación* <u>*Total*</u> surge que no hubo un término de vigencia.[55] Por lo tanto, dicho contrato sólo

---

[53] Véase Apéndice del recurso apelativo, págs. 1-5.
[54] 31 LPRA § 10801.
[55] El inciso #5 del contrato lee como sigue: "*The Start Date of this contract is expected to be on: <u>29-Aug-2022</u>. The duration of the contract is <u>N/A</u>, or until the project tasks are executed, completed,*

le creó a la Apelante una expectativa de empleo que no cumple con las exigencias para entablar una causa de acción por interferencia torticera. Debemos recordar que, bajo un contrato de exclusividad sin término fijo, la relación laboral puede terminar por voluntad de cualquiera de las partes. A tenor con lo anterior, la Sra. Maldonado no tiene una reclamación plausible contra Adecco que le permita obtener un remedio adecuado en ley, por lo que no procede la imposición de daños y perjuicios contra la Apelada, particularmente, bajo la modalidad de interferencia torticera.

Finalmente, es meritorio señalar que MG Staffing Group no es parte en el pleito de epígrafe y no existe alegación alguna en su contra. Por lo tanto, en esta ocasión, no corresponde inmiscuirnos en la decisión que tomó dicha empresa como patrono.

-IV-

A la luz de los fundamentos antes expresados, se *confirma* la Sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

or the condition to request the resources cease, what happens first. The contract will be valid during the period established above." Véase Apéndice del *Alegato en Oposición de la Parte Apelada*, pág. 52.