ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **HON. JULIO HIRAM FELICIANO PRIETO, Registrador de la Propiedad**<br><br>Apelado<br><br>v.<br><br>**GOBIERNO DE PUERTO RICO y/o el ESTADO LIBRE ASOCIADO DE PUERTO RICO, representado por su Secretaria de Justicia, HON. LOURDES L. GÓMEZ TORRES**<br><br>Apelante | TA2026AP00132 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: **SJ2025CV06608**<br><br>Sobre: *Injunction* (Entredicho Provisional, *Injunction* Preliminar y Permanente), Sentencia Declaratoria |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 22 de abril de 2026.

Comparece el Gobierno de Puerto Rico, representado por la Oficina del Procurador General de Puerto Rico (en adelante, Gobierno de Puerto Rico o parte apelante) y solicita la revisión de la *Sentencia* dictada el 12 de noviembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI desestimó la acción interdictal incoada por el señor Julio Hiram Feliciano Prieto (señor Feliciano Prieto o parte apelada), pero declaró *Ha Lugar* la *Demanda* en cuanto a la solicitud de sentencia declaratoria. En consecuencia, determinó que al señor Feliciano Prieto le asistía la cláusula de continuidad indefinida de la Ley Núm. 198 de 1979 y no la limitada establecida en la Ley Núm. 210-2015.

Por los fundamentos que expondremos a continuación, se revoca, en parte, la *Sentencia* apelada.

**I.**

Según surge del expediente, el señor Feliciano Prieto fungió como Registrador de la Propiedad desde el 28 de diciembre de 2012, hasta el 30 de junio del 2025, cuando fue separado de su puesto por la Secretaria de Justicia, la Hon. Lourdes L. Gómez Torres. A la fecha de su nombramiento, se encontraba vigente la Ley Núm. 198 de 8 de agosto de 1979, según enmendada, conocida como "Ley Hipotecaria y del Registro de la Propiedad". Su nombramiento, con un término de 12 años, vencía el 28 de diciembre de 2024.

Lo anterior provocó que, el 22 de julio de 2025, el señor Feliciano Prieto presentara una *Demanda* sobre *injunction* preliminar y permanente y sentencia declaratoria contra el Gobierno de Puerto Rico. Esencialmente, alegó que la Ley Núm. 210-2015, que derogó la Ley Núm. 198 de 1979, no tiene cláusula de retroactividad expresa y, que de su texto no surgía una retroactividad tácita. Precisó que: (1) la determinación de la vigencia de su puesto era regulada por el texto claro y no ambiguo del Artículo 11 de la Ley Núm. 198 de 1979, a los efectos de que su nombramiento se extendía hasta que su sucesor fuera nombrado, y (2) la cláusula de continuidad del referido Artículo 11 es una indefinida.

En suma, el señor Feliciano Prieto le solicitó al TPI que dictara una sentencia declaratoria en la cual determinara: (1) la naturaleza prospectiva de la Ley Núm. 210-2015 y que esta no era de aplicación al término de su nombramiento por no contener una cláusula expresa de retroactividad y tampoco surgir de esta ley un efecto retroactivo tácito, y (2) la validez de la naturaleza indefinida de la cláusula de continuidad; que dicho término es parte de su

nombramiento original; que no existía una vacante que permitiera a la Honorable Gobernadora de Puerto Rico designar en receso a un sustituto, y (3) declarara que el término de su nombramiento no había vencido, por lo que se encontraba en todo efecto y vigor hasta tanto su sucesor fuera nominado y confirmado por el Senado de Puerto Rico. Además, le requirió al Tribunal que dictara una orden de entredicho provisional, *injunction* preliminar y permanente, ordenando su reinstalación de manera inmediata a su posición de Registrador de la Propiedad, con el pago de todos sus salarios y emolumentos dejados de percibir durante el periodo que fue ilegalmente privado de su posición. Por último, exigió que se impidiera la juramentación de un sustituto hasta que este fuera confirmado por el Senado de Puerto Rico.

El 14 de agosto de 2025, el Gobierno de Puerto Rico incoó una *Moción de Desestimación,* por entender que la demanda carecía de méritos. Razonó que el señor Feliciano Prieto no podía ocupar el término de Registrador de la Propiedad porque su nombramiento venció el 28 de diciembre de 2024 y este no fue renominado a su cargo. Añadió que el Artículo 284 de la Ley Núm. 210-2015 dispone categóricamente que sus funciones cesarían una vez su sucesor tomara posesión del cargo o finalizara la próxima sesión legislativa siguiente a la fecha de expiración de su término, lo que ocurriera primero. Expuso que el señor Feliciano Prieto estaba impedido de ejercer el cargo de Registrador de la Propiedad, toda vez que la sesión legislativa culminó el 30 de junio de 2025. Resaltó que éste no podía ampararse en una ley derogada para fundamentar su reclamo. Argumentó que la intención legislativa de la Ley Núm. 210-2015 es establecer un límite de tiempo a la cláusula de continuidad establecida en su Artículo 284.

Asimismo, el Gobierno de Puerto Rico expuso que, si bien la Ley Núm. 198 de 1979 establecía una cláusula de continuidad hasta que el sucesor del Registrador de la Propiedad fuese nombrado, ese marco jurídico cambió con la aprobación de la Ley Núm. 210-2015. Por ende, arguyó que no procedía una sentencia declaratoria ante la ausencia de una incertidumbre jurídica y, además, que era improcedente la solicitud de *injunction* porque el señor Feliciano Prieto no sufría un daño irreparable. El 29 de agosto de 2025, el señor Feliciano Prieto se opuso al petitorio de desestimación.

Luego de varios trámites procesales[1], el 12 de noviembre de 2025, el TPI pronunció el dictamen apelado, en el cual incluyó los siguientes hechos pertinentes:

1. El Lcdo. Julio Feliciano Prieto fue designado por el Gobernador de Puerto Rico como Registrador de la Propiedad, y confirmado por el Senado de Puerto Rico, habiendo tomado posesión de su cargo el 28 de diciembre del 2012, y por un término de doce (12) años.

2. El término por el cual fue nombrado el demandante expiró el 28 de diciembre de 2024.

3. El 1ro de julio de 2025, el demandante se personó a trabajar, registró su asistencia en el sistema biométrico de asistencia, y al intentar ingresar al servidor del Departamento de Justicia, se percató que no tenía acceso, reflejándose un error de que su nombre de usuario no estaba activo. Al intentar ingresar desde otra computadora al sistema de informática registral Karibe el programa mostró un mensaje de que su nombre de usuario había expirado.

4. No es hasta el 9 de julio de 2025, a ocho (8) días de haber perdido acceso a sus instrumentos de trabajo, que el Demandante recibió un correo electrónico de parte de la Oficina de Recursos Humanos del Departamento de Justicia, citándole para una reunión a celebrarse el 10 de julio de 2025.

5. El 10 de julio del 2025 en dicha Oficina se le entregó al Demandante una carta que textualmente leía: "Estimado licenciado Feliciano Prieto: Reciba un saludo cordial. El 28 de diciembre de 2012, usted fue nombrado en un puesto de Registrador de la Propiedad. De acuerdo con su expediente de personal que obra en

---

[1] Entre ellos, la presentación de un *Auto de Certificación Intrajurisdiccional* ante el Tribunal Supremo de Puerto Rico por parte del señor Feliciano Prieto. Mediante *Resolución* dictada el 29 de agosto de 2025, el Tribunal Supremo lo declaró *No Ha Lugar*.

la Secretaría Auxiliar de Recursos Humanos, su nombramiento venció el 28 de diciembre de 2024. Le informo que efectivo el 30 de junio del 2025, venció la vigencia de su nombramiento. En vista de lo anterior, debe comunicarse con la Secretaría Auxiliar de Recursos Humanos para conocer el trámite a seguir. Además, se incluye el Formulario de Certificación de Devolución de la Propiedad el cual debe complementarlo en todos los apartados. Le expresamos nuestro mayor agradecimiento por el desempeño que realizó en beneficio del Departamento de Justicia. Cordialmente, Lourdes L. Gómez Torres, Secretaria de Justicia".

6. El 16 de octubre de 2025, fue juramentado y tomó posesión de su cargo como Registrador el Lcdo. Luis Alberto Sifonte.

El TPI debía resolver si a la controversia ante sí le aplicaba la cláusula de continuidad indefinida de la Ley Núm. 198 de 1979 o la cláusula de continuidad limitada de la Ley Núm. 210-2015.

Tras un análisis de las leyes aludidas y la doctrina de derechos adquiridos, el foro *a quo* hizo hincapié en que, cuando el señor Feliciano Prieto ocupó el puesto de Registrador de la Propiedad, estaba vigente la Ley Núm. 198 de 1979, que reconocía el derecho a permanecer en el puesto hasta que su sucesor fuese nombrado. Así, concluyó que el señor Feliciano Prieto tenía un derecho a continuar en el cargo hasta que su sucesor fuese nombrado y que ello no era una mera expectativa, sino que era parte integral de su puesto.

En armonía con lo anterior, el Tribunal de Primera Instancia realizó las siguientes expresiones:

Fíjese que citamos el análisis del Tribunal Supremo que un derecho adquirido es parte del patrimonio de una persona. Cualquier ley que altere el estado de derecho del puesto y la duración del término del funcionario está afectando su derecho propietario y patrimonial. Al igual que las escoltas policiacas de los exgobernadores son un derecho al haberse interpretado así por más de cuarenta años, el término de un nombramiento que pasa por el crisol de la Gobernadora y el Senado, y que cuando se crea contiene una cláusula de continuidad, dicha cláusula constituye una parte intrínseca de su puesto que lo reconoce como un funcionario *de jure*, consecuentemente una ley posterior no puede quitarle su derecho.

El TPI desestimó la acción interdictal instada por el señor Feliciano Prieto, pero declaró *Ha Lugar* la demanda en cuanto a la solicitud de sentencia declaratoria. Determinó que al señor Feliciano Prieto le asistía la cláusula de continuidad indefinida, toda vez que esta se establecía en los Artículos 8 y 11 de la Ley Núm. 198 de 1979 y que ello constituía un derecho adquirido. Por tanto, ordenó al Gobierno de Puerto Rico, por conducto del Departamento de Justica, pagar al señor Feliciano Prieto todos sus salarios y emolumentos dejados de percibir desde el 1 de julio de 2025 hasta el 15 de octubre de 2025. Detalló que dichas sumas acumularían el interés legal anual a razón de 4.5%.

Insatisfecho, el Gobierno de Puerto Rico presentó una moción de reconsideración, pero la misma fue declarada *No Ha Lugar* por medio de una *Orden* pronunciada por el TPI el 10 de diciembre de 2025.

Aun en desacuerdo, el Gobierno de Puerto Rico, por conducto de la Oficina del Procurador General, comparece ante nos y alega que el foro primario cometió los siguientes errores:

> Erró el Tribunal de Primera Instancia al decretar que, en virtud de la doctrina de derechos adquiridos, el apelado tenía un derecho a continuar ocupando su puesto como Registrador de la Propiedad tras concluir el periodo de su nombramiento a término fijo, porque le "asiste" la cláusula de continuidad de la derogada Ley Núm. 198-1979.

> Erró el Tribunal de Primera Instancia al decretar que el apelado tenía derecho a que no se aplicara "retroactivamente" la cláusula de continuidad de la vigente Ley del Registro de la Propiedad Inmobiliaria de Puerto Rico tras el vencimiento del término fijo de doce años de su nombramiento.

> Erró el Tribunal de Primera Instancia al decretar que, en virtud de ese inexistente "derecho adquirido", el Estado debe pagarle al apelado todos los salarios y emolumentos dejados de percibir desde el 1 de julio de 2025 hasta el 15 de octubre de 2025.

El 2 de marzo de 2026, el señor Feliciano Prieto presentó su alegato en oposición. Procedemos a resolver con el beneficio de la comparecencia de todas las partes.

**II.**

**A.**

La Ley Núm. 198 de 8 de agosto de 1979, según enmendada[2], conocida como la *Ley Hipotecaria y del Registro de la Propiedad*, fue derogada por la Ley Núm. 210 de 8 de diciembre de 2015 (Ley Núm. 210-2015), según enmendada, conocida como la *Ley Inmobiliaria del Estado Libre de Asociado*, 30 LPRA sec. 6001 *et seq.*

En lo pertinente, el Artículo 8 de la Ley Núm. 198 de 1979, 30 LPRA sec. 2052, establecía lo siguiente:

> Las secciones del Registro de la Propiedad estarán a cargo de los Registradores de la Propiedad, a ellas designados, quienes **serán nombrados por el Gobernador con la aprobación del Senado por un término de doce años, y hasta que su sucesor sea nombrado**. Los Registradores de la Propiedad tienen la condición de funcionarios públicos para todos los efectos legales, y recibirán dentro de sus oficinas el tratamiento de Honorables.
>
> El Secretario podrá asignar más de un Registrador para atender cualquier sección, actuando entonces como Registrador Administrador de la sección, el de mayor antigüedad. (Énfasis nuestro).

El Art. 11 de la antedicha Ley, 30 LPRA sec. 2055, disponía que los Registradores desempeñarán sus cargos por el término por el cual fueron nombrados y hasta que su sucesor tome posesión de su cargo.

De otro lado, el Art. 284 de la Ley Núm. 210-2015 establece que el término del nombramiento de un Registrador vence a los doce (12) años. Si es renominado y no confirmado, deberá abandonar el cargo inmediatamente. **De no ser renominado, el Registrador continuará en funciones hasta que su sucesor tome posesión del**

---

[2] Véase, Ley Núm. 38-2013.

**cargo o finalice la próxima sesión legislativa siguiente a la fecha de expiración de su término, lo que ocurra primero**. 30 LPRA sec. 6496. (Énfasis nuestro).

**B.**

La cláusula de continuidad o cláusula de "*holding over*" es un mecanismo que asegura que un funcionario designado por un término fijo de años continúe en el cargo al finalizar el periodo para el cual fue designado. Estas son importantes para la continuidad de las funciones gubernamentales. *Rosario Rodríguez v. Rosado Colomer et al.*, 208 DPR 419, 431 (2021).

En *Nogueras v. Hernández Colón*, 127 DPR 638, 651 (1991) (per curiam), el Tribunal Supremo de Puerto Rico resolvió un caso relacionado a nombramientos judiciales necesarios para cubrir ciertos puestos ocupados por jueces con nombramientos vencidos, pero que continuaban ocupando los mismos en virtud de la cláusula de continuidad ("*holding over*") contenida en la Ley de la Judicatura y la Ley sobre Jueces Municipales. En esa ocasión, el Tribunal Supremo determinó que la indefinición en el término de duración de una incumbencia ("*holding over*") atentaba contra el equilibrio que pretende mantener la Constitución en lo que respecta al ejercicio de nombramiento compartido por la Rama Ejecutiva y la Legislativa.

El Tribunal Supremo añadió que tal indefinición podía desencadenar en una situación en la que se trastocara el equilibrio deseado a la hora de extender nombramientos que requieran consejo y consentimiento del Senado. Asimismo, precisó que el período de ("*holding over*") se debía concebir como un período adicional para dar oportunidad a ambos poderes de descargar su función constitucional de nombramiento y evitar el perjuicio que la vacante en el puesto acarrearía. *Íd.*, pág. 652.

En consonancia con lo anterior, el Tribunal Supremo expresó lo siguiente:

> [E]l término de duración del período posterior a la expiración del término del incumbente ("*holding over*") en virtud de la llamada cláusula de continuidad no e[s] ilimitado. El mismo se extendería hasta que su sucesor tome posesión de su cargo, pero nunca después de finalizada la próxima sesión legislativa siguiente a dicha expiración. Si los poderes Ejecutivo y Legislativo no logran llegar a un acuerdo sobre la renominación del incumbente o su sucesor antes de finalizada la sesión ordinaria señalada, el cargo quedaría vacante hasta tanto ambos poderes descarguen su obligación constitucional de nombramiento. Este resultado está acorde con la doctrina de separación de poderes y con las razones estatutarias que inspiraron la cláusula de continuidad.
>
> Aún cuando el resultado de este método de nombramientos, igual que el de los nombramientos de receso, puede ser la eventual creación de una vacante, ésta surgiría después que ambos poderes constitucionales han tenido la oportunidad de considerar el asunto. Si no lo resolvieron podemos presumir la existencia de un *impase* que la continuación en el cargo por el incumbente puede eternizar. La vacante permite en ese caso que el proceso constitucional de nombramiento continúe y se acelere. Esa continuación puede darse inmediatamente pues la vacante se puede y debe cubrir con un nombramiento de receso que da lugar a que se reanude el proceso. *Íd.*, págs. 652-653.

Recientemente, en *Rosario Rodríguez v. Rosado Colomer et al.*, supra, y en el contexto de un caso electoral, el Tribunal Supremo de Puerto Rico revocó la doctrina establecida en *Nogueras v. Hernández Colón*, supra, sobre las cláusulas de continuidad. La controversia planteada en el caso se circunscribía a determinar si los funcionarios que ocupaban los cargos de Presidente y Presidenta Alterna de la Comisión Estatal de Elecciones (CEE) podían continuar desempeñando sus funciones legalmente, luego de culminar el término dispuesto en la ley, de acuerdo con una cláusula de continuidad indefinida. Esto, a la luz del límite jurisprudencial impuesto en *Nogueras v. Hernández Colón*, sobre la duración máxima de este tipo de cláusula. El Tribunal Supremo puntualizó que "una cláusula de continuidad indefinida constituye un

mecanismo legislativo válido para vindicar los intereses institucionales del Gobierno. Como resultado, los funcionarios incumbentes en cuestión pueden continuar en sus cargos hasta que sus sucesores sean nombrados y tomen posesión, tal y como dispone la ley." *Rosario Rodríguez v. Rosado Colomer et al.*, supra, págs. 423-424.

Al mismo tiempo, en *Rosario Rodríguez v. Rosado Colomer et al.*, supra, pág. 438, el Tribunal Supremo de Puerto Rico, **fundamentándose en un análisis integrado del Código Electoral de 2020, la intención legislativa que sirvió de base para el referido estatuto, así como la jurisprudencia interpretativa de las cláusulas de continuidad, y considerando el momento histórico en que se encontraban** (el cual no dejaba margen a dudas sobre la necesidad de mantener a la CEE operando de manera continua), concluyó que:

> … [L]a cláusula de continuidad cumple una finalidad importante en el funcionamiento de nuestras instituciones gubernamentales, ya que permite que los funcionarios que han sido nombrados **de acuerdo con la ley continúen ejerciendo sus cargos luego de habérseles vencido el término establecido hasta tanto el Poder Ejecutivo y el Legislativo se pongan de acuerdo en cuanto a sus sucesores**. No podemos perder de perspectiva que, mediante la aprobación de la referida cláusula de continuidad, las ramas constitucionales de gobierno manifestaron su deseo de preservar la continuidad de los trabajos realizados por los funcionarios seleccionados —de acuerdo a la ley y con el aval legislativo— a los cargos de Presidente y Presidente Alterno de la CEE. De igual forma, con la aprobación del Código Electoral de 2020, ambos poderes constitucionales consignaron expresamente su rechazo a la interrupción operacional de la CEE. Al mismo tiempo, repudiaron el disloque que los cargos vacantes ocasionarían en una entidad gubernamental cuyo funcionamiento continuo es necesario para coordinar cualquier evento electoral en o fuera del año de elecciones generales. (Énfasis nuestro).

Finalmente, se determinó que los funcionarios podían continuar desempeñando legalmente sus respectivos cargos como Presidente y Presidenta Alterna de la CEE por operación de la

cláusula de continuidad provista por ley, aun despúes de comenzar y concluir la sesión legislativa, hasta tanto sus sucesores fueran nombrados y tomaran posesión de sus cargos. Esto, basado en la finalidad del *Código Electoral de 2020* de mantener a la CEE en un funcionamiento continuo, de manera que pudiera estar disponible para coordinar cualquier evento electoral ordenado por ley, en o fuera del año de elecciones generales. *Rosario Rodríguez v. Rosado Colomer et al.,* supra, págs. 430, 439.[3]

## C.

La Regla 59 de Procedimiento Civil establece la autoridad de los tribunales para declarar derechos, estados y otras relaciones jurídicas, aunque se inste o pueda instarse otro remedio. 32 LPRA Ap. V, R. 59.1. El mecanismo para llevar a cabo dicha facultad se conoce como la sentencia declaratoria. El propósito de una sentencia declaratoria es despejar una incertidumbre o poner fin a una controversia, pues se trata de un mecanismo procesal adecuado para anticipar potenciales demandas. *Suárez v. CEE. I,*163 DPR 347 (2004); *Charana v. Pueblo,* 109 DPR 641 (1980). Según ha sido interpretada la precitada regla, la sentencia declaratoria establece un mecanismo procesal de carácter remedial o profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra el promovente. *Beltrán Cintrón et al v. ELA et al,* 204 DPR 89, 109 (2020); *Romero Barceló v. ELA,* 169 DPR 460, 475 (2006).

También cabe indicar que la Regla 59.3 de Procedimiento Civil dispone que el tribunal podrá negarse a dar o registrar una

---

[3] El Tribunal Supremo decretó que el precedente establecido en *Nogueras v. Hernández Colón* deformó la doctrina de las cláusulas de continuidad y creaba problema para la continuidad de la gestión pública. Opinión de conformidad del Juez Asociado Estrella Martínez a la cual se unió el Juez Asociado Martínez Torres en *Rosario Rodríguez v. Rosado Colomer et al.,* supra, pág. 440.

sentencia o decreto declaratorio cuando tal sentencia o decreto, no haya de poner fin a la incertidumbre o controversia que originó el procedimiento. De esta manera, se establece que los tribunales tendrán amplia discreción con relación a las peticiones de sentencias declaratorias. 32 LPRA Ap. V, R. 59.3.

**III.**

Mediante sus señalamientos de error, la parte apelante esencialmente aduce que la *Sentencia* en cuestión resulta errónea en derecho porque desvirtuó el propósito de las cláusulas de continuidad. Es su parecer que la controversia del caso de referencia no versa sobre dichas cláusulas; más bien en si la cláusula de continuidad que estaba en vigor a la fecha en que un funcionario a término fijo tomó posesión de su cargo extiende el interés propietario del funcionario en su cargo más allá de ese término.

En ese sentido, esboza que la jurisprudencia vigente del Tribunal Supremo de Puerto Rico no le reconoce un "derecho adquirido" a un funcionario público a término fijo a continuar ocupando un cargo en virtud de una cláusula de continuidad derogada. Añade que esta nueva norma es enfática al concluir que el propósito de las cláusulas de continuidad es "vindicar los intereses institucionales del Gobierno". Además, razona que las aludidas cláusulas no existen para proteger a los funcionarios, sino que son una elección de política pública del legislador, que no es parte del ejercicio del poder de nombramiento.

En armonía con lo anterior, la parte apelante alega que la cláusula de continuidad vigente a la fecha del nombramiento de un funcionario nombrado por el Poder Ejecutivo y confirmado por la Legislatura no entra al patrimonio de este, por lo que, tras el vencimiento del término fijo del cargo, el funcionario no tiene derecho adquirido alguno a continuar ocupando el puesto en virtud

de una cláusula anterior que fue derogada. Argumenta que la mera expectativa que pueda forjar un funcionario de alargar el término fijo de duración de su cargo no le genera un derecho adquirido, por lo que la cláusula de continuidad que aplicará cuando expire ese término es aquella que esté vigente en ese momento. Reitera que el interés propietario del señor Feliciano Prieto en su cargo de Registrador de la Propiedad se extendía únicamente hasta el final del plazo de los 12 años de su nombramiento. Sostiene que la legislación aplicable al momento de finalizar el término del nombramiento de la parte apelada era la Ley Núm. 210-2015 y que, al este no ser renominado al cargo, no podía continuar en funciones después de finalizada la sesión legislativa siguiente al vencimiento de su término. Expone que, como la sesión legislativa culminó el 30 de junio de 2025, la parte apelada solo podía continuar en funciones como Registrador de la Propiedad hasta esa misma fecha, tal como lo determinó el Departamento de Justicia.

De otro lado, la parte apelada alega que no se cometieron ninguno de los errores señalados por la parte apelante. Puntualiza que la determinación del Tribunal de Primera Instancia, a los efectos de que la ley aplicable al caso era la Ley Núm. 198 de1979, y no la Ley Núm. 210-2015, estuvo correctamente fundamentada en la doctrina de derechos adquiridos y en el principio general de irretroactividad de las leyes. Entiende que los argumentos de la parte apelante (1) pretenden desplazar la controversia hacia una interpretación aislada de la ley vigente, prescindiendo del momento en que se perfeccionó la relación jurídica objeto del caso y, (2) sugieren acudir a consideraciones de intención legislativa para alterar el alcance de disposiciones cuyo texto es claro.

A su vez, la parte apelada colige que su derecho no surgió al vencimiento del término de 12 años, sino al perfeccionarse su

nombramiento bajo el marco normativo vigente en el 2012. Es su contención que la conclusión del foro primario fue consistente con la normativa aplicable al determinar que la cláusula de continuidad quedó incorporada al régimen jurídico del cargo y no podía ser eliminada posteriormente sin afectar una situación jurídica ya consolidada.

Por último, la parte apelada arguye que el punto medular de la controversia que presenta el caso de autos no es simplemente que la Ley Núm. 210-2015 esté vigente, sino si podía utilizarse para modificar los efectos jurídicos de un nombramiento perfeccionado bajo un marco normativo previo que contemplaba la continuidad en funciones hasta el nombramiento del sucesor. Por eso, argumenta que, en ausencia de una disposición expresa o de una intención legislativa inequívoca que autorice la aplicación retroactiva, la determinación del foro *a quo* fue conforme a derecho. Añade que una vez se reconoció la subsistencia del cargo durante el periodo en controversia (desde el 1 de julio de 2025 hasta el 15 de octubre de 2025), el remedio económico concedido por el TPI no constituyó una concesión discrecional, sino la única consecuencia jurídica lógica e inevitable.

Luego de un ponderado análisis del expediente, el derecho aplicable y los argumentos de las partes, somos del parecer que el TPI erró al aplicar a la controversia de autos la cláusula de continuidad indefinida dispuesta en la Ley Núm. 198 de 1979. Dicha ley establecía que el nombramiento del Registrador de la Propiedad se extendería hasta que su sucesor fuera nombrado. El sucesor de la parte apelada fue confirmado el 16 de octubre de 2025.

En este caso, procede aplicar las disposiciones de la Ley Núm. 210-2015, sin que ello implique que se perjudiquen los derechos adquiridos de la parte apelada. Su derecho adquirido se

circunscribía a ocupar el cargo de Registrador de la Propiedad hasta el 28 de diciembre de 2024. El término del cargo expiró válidamente. La Ley Núm. 210-2015 no alteró el término original de 12 años del nombramiento. Esta reguló el periodo posterior a la expiración, lo cual, bajo las circunstancias del caso de referencia, no constituye un derecho propietario adquirido.

Por otra parte, cabe destacar que lo resuelto en *Rosario Rodríguez v. Rosado Colomer et al.*, supra, no dejó sin efecto ni derogó la Ley Núm. 210-2015. En ese caso, el Tribunal Supremo de Puerto Rico revocó a *Nogueras v. Hernández Colón,* supra; reconoció la validez de las cláusulas de continuidad según las delimite la ley y sostuvo que dichas cláusulas pueden ser indefinidas, si el estatuto así lo dispone. La ley aplicable a dicho caso establecía que el funcionario permanecería en su puesto, aun vencido el término, hasta que el sucesor tomara posesión, con el fin de evitar un disloque en la gestión pública. Específicamente, en cuanto a los nombramientos del Presidente y del Presidente Alterno de la CEE, el Art. 3.7 del Código Electoral de 2020 dispone, en lo pertinente, que estos serán nombrados no más tarde del 1 de julio del año siguiente a una elección general y que el término para los cargos antes mencionados será de cuatro (4) años a partir de esa fecha, **hasta que los sucesores sean nombrados y tomen posesión del cargo**.[4] Por tanto, dicha jurisprudencia reconoce una continuidad indefinida según el texto de la ley aplicable (Código Electoral de 2020).

No obstante, la situación en el caso de autos es distinguible porque la ley aplicable sí establece un límite. La causa de acción de la parte apelada nació el 30 de junio de 2025, cuando su derecho a continuar en el puesto ya estaba condicionado expresamente con la

---

[4] 16 LPRA sec. 4517.

Ley Núm. 210-2015, es decir, **hasta que el sucesor tomara posesión o con el cierre de la próxima sesión legislativa**. Nótese que la duración del "*holding over*" depende de las disposiciones de la ley aplicable.

Por ende, la parte apelada podía permanecer en su puesto hasta el 30 de junio de 2025. Luego de esa fecha, cesaba legalmente en funciones, aunque no hubiese sucesor aún. Así las cosas, al no tener derecho a ocupar el cargo después de culminada la sesión legislativa, no procede que el Gobierno de Puerto Rico pague a la parte apelada todos los salarios y emolumentos dejados de percibir desde el 1 de julio de 2025 hasta el 15 de octubre de 2025.

En síntesis, a tenor con el derecho discutido y a base de los hechos del caso bajo examen, concluimos que erró el Tribunal de Primera Instancia al extender la permanencia de la parte apelada más allá de lo dispuesto por ley, fundamentándose en la aplicación de la pasada Ley Núm. 198 de 1979. No procedía dictar sentencia declaratoria, al no existir incertidumbre jurídica.

**IV.**

Por los fundamentos expuestos, revocamos, en parte, la *Sentencia* apelada. Lo anterior, únicamente en cuanto a la solicitud de sentencia declaratoria. Se confirma la desestimación de la acción interdictal incoada por la parte apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones